

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0283-16

## ROGER DALE VANDYKE, Appellant

## v.

## THE STATE OF TEXAS

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE NINTH COURT OF APPEALS
## MONTGOMERY COUNTY

**NEWELL, J., delivered the opinion of the Court in which KELLER, PJ., HERVEY, ALCALA, RICHARDSON, KEEL AND WALKER, JJ., joined. YEARY, J., filed a dissenting opinion in which KEASLER, J., joined.**

In 2015 our Legislature passed Senate Bill 746, a bill that amended several provisions within the Civil Commitment of Sexually Violent Predators Act contained within the Health and Safety Code. The amendments removed a provision that had made it a criminal offense for a sexually violent predator who had been civilly committed to fail to comply with the terms of his sex offender treatment. Furthermore, the

Legislature included a savings clause in S.B. 746 that made the legislation apply to anyone who had been convicted of the offense of violating the terms of his civil commitment and whose direct appeal of that criminal conviction was pending at the time the legislation became effective.[1] When Governor Abbott signed S.B. 746 into law, it became effective immediately. Appellant's direct appeal of his criminal conviction for violating the terms of his civil commitment was pending at that time.

After S.B. 746 became effective, Appellant filed a supplemental brief with the court of appeals arguing that his conviction was not a final conviction and it should, therefore, be reversed because the amendment to Section 841.085 decriminalized his conduct. The State agreed that this savings clause applies to Appellant because the statute became effective when Appellant's conviction was not yet final due to the pendency of his case on appeal. However, the State argued that the savings clause in S.B. 746 violated the Separation of Powers Clause of the Texas Constitution because it usurped the governor's power to grant

---

[1] When the House voted on the final version of S.B. 746, only three representatives voted against the bill. H.J. of Tex., 84th Leg., R.S. 3689 (2015) (floor vote on S.B. 746). When the Senate voted on the final version of S.B. 746, no one voted against the bill. S.J. of Tex., 84 Leg., R.S. 1817 (2015) (floor vote on S.B. 746).

clemency.[2]  The court of appeals affirmed his conviction, holding that the savings clause in S.B. 746 violates the Separation of Powers Clause of the Texas Constitution.  We granted Appellant's petition for discretionary review on the sole issue of whether the Court of Appeals erred in holding that the savings clause in S.B. 746 usurped the governor's clemency power.  We reverse and vacate the judgment.

## I. Case History

This case presents a constitutional question regarding the powers of the Executive and Legislative branches of our government.  The underlying facts of the case are not determinative; however the time line of events in this case is important.  In January 2011, the trial court determined that Appellant was a sexually violent predator, as defined in Texas Health and Safety Code § 841.003,[3] and civilly committed him in accordance with Texas Health and Safety Code § 841.081.[4]  The court

---

[2] The State makes no argument that the savings clause in S.B. 746 violates the Separation of Powers Clause of the Texas Constitution by unduly interfering with a court's power to enter a final judgment.  *See Ex parte Lo*, 424 S.W.3d 10, 29 (Tex. Crim. App. 2014) (op. on reh'g) ("Entering a final judgment is a core judicial power; it falls within that realm of judicial proceedings 'so vital to the efficient functioning of a court as to be beyond legislative power.'").

[3] Health & Safety Code § 841.003(a) provides: "A person is a sexually violent predator for the purposes of this chapter if the person: (1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence."

[4] Health & Safety Code § 841.081 provides: "If at a trial conducted under Subchapter D the judge or jury determines that the person is a sexually violent predator, the judge shall

ordered Appellant to comply with the provisions of Health and Safety Code § 841.082, the Agreed Final Judgment, and the Order of Commitment.

At the time of the offense, Health and Safety Code § 841.082(a)(4) required Appellant to participate in and comply with a course of treatment provided by the Office of Violent Sexual Offender Management (OVSOM). Between July 17, 2011, and March 21, 2013, Appellant failed to make progress in the treatment and violated several rules and requirements of his treatment program.  On March 21, 2013, the OVSOM discharged Appellant from the Outpatient Sexually Violent Predator Treatment Program due to his unsuccessful progress in treatment.  His discharge constituted a failure to comply with his course of treatment, as required by the then existing version of Health and Safety Code § 841.082(a)(4).

In June 2013, a grand jury indicted Appellant for violating Health and Safety Code § 841.082(a)(4).  The State predicated the indictment on Health and Safety Code § 841.085(a), which, at the time, permitted prosecution for any violation of Health and Safety Code § 841.082(a). Appellant filed a pre-trial writ of habeas corpus and motion to quash and dismiss, arguing that the relevant Health and Safety Code provisions were

commit the person for treatment and supervision to be coordinated by the office."

unconstitutional.[5]  The trial court denied the writ of habeas corpus and motion.  On March 20, 2014, Appellant pleaded guilty to the offense charged and true to the enhancement paragraphs; the court assessed punishment at imprisonment for twenty-five years.  Appellant filed an appeal with the Ninth Court of Appeals on March 17, 2015, raising the same arguments he made in his pre-trial writ of habeas corpus and motion.

While Appellant's appeal was pending, S.B. 746 was introduced in the Legislature.  The bill proposed amendments to the Civil Commitment of Sexually Violent Predators Act contained within the Health and Safety Code.  The amendments were designed to address "the growing crisis of the civil commitment of sexually violent predators program that could result in a major threat to the public safety in Texas."[6]  Specifically, the Legislature was concerned with mismanagement of the OVSOM which had led to financial strain on the civil commitment program and threats by the

---

[5] Appellant argued that the Health and Safety Code provisions unconstitutionally delegated unlimited authority to the OVSOM and unconditional authority to the trial court; that the provisions were vague and overbroad on their face; that OVSOM was not permitted to discharge Appellant from the program and prosecution for OVSOM's decision to discharge him is an ultra vires act violating his due process rights; Section 841.085 is an unconstitutional strict liability crime; Appellant's civil commitment order imposes more restrictive standards than permissible by law; Section 841.142 facially violates the first amendment; and the provisions violate the first amendment's overbreadth doctrine.

[6] Senate Comm. on Crim. Justice, Bill Analysis, Tex. S.B. 746, 84th Leg., R.S. (2015).

vendors who housed civilly committed sexual violent predators that they would no longer house them.[7]

To address this crisis, the amendments transferred authority over the civil commitment program to the Texas Civil Commitment Office.[8] The amendments also created a structure for the civil commitment program by implementing a tiered program and guidelines dictating how sexually violent predators would move through the tiers.[9]  Based on the guidelines, sexually violent predators could move from a higher level of restriction to a lower level of restriction, or vice versa, based on their behavior and performance.[10]

In conjunction with the tiered system to better monitor sexually violent predators throughout their civil commitment, the amendments also removed the failure to participate in and comply with the proscribed sex offender treatment program from the list of criminal offenses sexually violent predators are subject to under Health and Safety Code § 841.085. In effect, the Legislature made the difficult policy determination that the

---

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

new tiered program would be better suited than criminal prosecution to address lack of participation in and compliance with sex offender treatment by those who had been civilly committed. In addition, S.B. 746 contained a savings provision instructing that the amendments were to apply to offenses "committed before, on, or after the amendment's effective date, except that a final conviction for an offense under that section that exists on the effective date of this Act remains unaffected by this Act."[11] Due to the stated important public safety concerns associated with S.B. 746, the Legislature and Governor Abbott determined that the amendments should be implemented as soon as the bill was signed by Governor Abbott. Governor Abbott signed S.B. 746 on June 17, 2015, and the amendments immediately became effective. This occurred while Appellant's case was pending on appeal and before his conviction became final.

After S.B. 746 became effective, Appellant filed a supplemental brief with the Court of Appeals, arguing that the amended Health and Safety Code § 841.085 applied to his case because his appeal was pending as of June 17, 2015, so his conviction was not final. Further, if the

_____

[11] Act of May 21, 2015, 84th Leg., R.S., ch. 845, 41, 2015 Tex. Gen. Laws 2700, 2711.

amendments applied to him then his conviction should be reversed because his conduct no longer constituted a criminal offense. The Court of Appeals held that the amended sections of the Health and Safety Code did apply to the Appellant because he did not have a "final conviction" as defined by this Court.[12]  However, the Court affirmed his conviction holding that the application of the amended Section 841.085 to pending convictions usurps the governor's clemency power and thus violates Article II, sec. 1 of the Texas Constitution, the Separation of Powers Clause.[13]

## II. Analysis

Before addressing the contested issue in this case, we address preliminary issues which the State and Appellant, and this Court, after independent examination, agree on.[14]  In asserting that the amendments decriminalize Appellant's conduct, both parties rely on the plain language of the amendments.  Health and Safety Code §§ 841.082 and 841.085 were amended as follows:

SECTION 13. Section 841.082(a)

---

[12] *VanDyke v. State*, 485 S.W.3d 507, 510 (Tex. App.—Beaumont 2015).

[13] *Id*. at 511.

[14] *See Saldano v. State*, 70 S.W.3d 873, 891 (Tex. Crim. App. 2002) (despite agreement by the parties, we nonetheless independently examine the merits of claims).

(a) Before entering an order directing a person's [outpatient] civil commitment, the judge shall impose on the person requirements necessary to ensure the person's compliance with treatment and supervision and to protect the community. The requirements shall include:

(1) requiring the person to reside where instructed [in a Texas residential facility under contract with the office or at another location or facility approved] by the office;

(2) prohibiting the person's contact with a victim [or potential victim] of the person;

(3) [prohibiting the person's possession or use of alcohol, inhalants, or a controlled substance;

[(4)] requiring the person's participation in and compliance with the sex offender treatment program [a specific course of treatment] provided by the office and compliance with all written requirements imposed by the [case manager or otherwise by the] office;

(4) [(5)] requiring the person to:

(A) submit to tracking under a particular type of tracking service and to any other appropriate supervision; and

(B) refrain from tampering with, altering, modifying, obstructing, or manipulating the tracking equipment; and

(5) [(6)] prohibiting the person from [changing the person's residence without prior authorization from the judge and from] leaving the state without [that] prior authorization from

the office

[; [(7) if determined appropriate by the judge, establishing a child safety zone in the same manner as a child safety zone is established by a judge under Section 13B, Article 42.12, Code of Criminal Procedure, and requiring the person to comply with requirements related to the safety zone; and

[(8) any other requirements determined necessary by the judge].

SECTION 19. Section 841.085(a)

(a) A person commits an offense if, after having been adjudicated and civilly committed as a sexually violent predator under this chapter, the person violates a civil commitment requirement imposed under Section 841.082(a)(1), (2), (4), or (5) [841.082].[15]

The State convicted Appellant of violating the former version of Section 841.082(a)(4), which at the time required Appellant to participate in and comply with the treatment program provided by the OVSOM and to comply with all written requirements imposed by the OVSOM.[16] At the time of Appellant's conviction, Section 841.085(a) made it a crime for Appellant to violate this statutory subsection. When the Legislature

---

[15] Senate Bill 746, 84th Leg., R.S. (2015).

[16] The 2015 amendments redesignated Section 841.082(a)(4) as subsection 841.082(a)(3), but the amendments did not change the substance of the provision.

amended Section 841.082 it redesignated this subsection as 841.082(a)(3). Under the current version of Section 841.085(a), the failure to participate in and comply with the treatment program provided by the Texas Civil Commitment Office is a violation of subsection 841.082(a)(3) but no longer subjects the violator to criminal prosecution. Additionally, S.B. 746 contained a savings clause which prohibits future prosecutions based on the failure to comply with a treatment program.

When we interpret statutes, our duty is to determine and give effect to the apparent intent of the legislators who voted on it.[17] In determining the legislative intent, we focus our attention on the text of the statute and how ordinary legislators would have understood the text.[18] We are not empowered to substitute what we believe is right or fair for what the Legislature has written, even if the statute seems unwise or unfair.[19] "[J]udicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted."[20] If we only defer to the legislature when we agree with their policy determinations then we are

---

[17] *Whitehead v. State*, 273 S.W.3d 285, 288 (Tex. Crim. App. 2008).

[18] *Id*.

[19] *Tamez v. State*, 11 S.W.3d 198, 203 (Tex. Crim. App. 2000) (Keller, J., dissenting); *see also Parnham v. Hughes,* 441 U.S. 347 (1979).

[20] *Vance v. Bradley*, 440 U.S. 93, 97 (1979).

not deferring to the legislature at all.

Here, the Legislature not only removed Appellant's conduct from the list of criminally punishable violations, but it also prevented future prosecutions for similar conduct. Viewing Section 841 in its entirety, along with the savings clause, the plain language demonstrates an intent to decriminalize this type of conduct. Therefore, we agree with the parties and the court of appeals that the amended sections of the Health and Safety Code decriminalized the failure to participate in and comply with a civil commitment treatment program.[21]

Appellant and the State also agree that, under the savings provision included with the passage of S.B. 746, the amendments apply to Appellant. The savings provision provides:

> The change in law made by this Act in amending Section

---

[21] We do note that the Legislature's actions did not absolve sexually violent predators from all requirements of their civil commitment. Though they cannot be convicted for failing to comply with or complete their treatment program, sexually violent predators retain their status as such until a court determines that their behavioral abnormalities have changed to the extent that they are no longer likely to engage in a predatory act of sexual violence. TEX. HEALTH & SAFETY CODE ANN. § 841.121(a) (West Supp. 2015). They remain subject to the Texas Civil Commitment Office's tiered program of treatment and supervision, which must include a tracking service, until a court determines they are no longer a sexually violent predator. *Id*. at §§ 841.083(a), 841.121(a). Under the tiered treatment program, the office may enforce disciplinary action for violations of the program's regulations and return a committed person to more restrictive settings, i.e. more restrictive housing and supervision, if deemed necessary by the person's behavior or progress to further treatment and protect the community. *Id*. at § 841.0834(c). Additionally, sexually violent predators are still subject to criminal punishment for violations of the other provisions in Health and Safety Code § 841.082(a).

841.085, Health and Safety Code, applies to an offense committed before, on, or after the effective date of this Act [June 17, 2015], except that a final conviction for an offense under that section that exists on the effective date of this Act remains unaffected by this Act.[22]

We have repeatedly held that a judgment of conviction is not final while the conviction is on appeal.[23] Appellant's conviction was pending on appeal as of June 17, 2015, and as such, was not a final conviction as of the effective date of the amendments for purposes of the applicability of the statute.[24] The court of appeals properly held that the amendments to Section 841.085 apply to Appellant. Having found that the amendments to the Health and Safety Code decriminalize Appellant's

---

[22] Act of May 21, 2015, 84th Leg., R.S., ch. 845, § 41, 2015 Tex. Gen. Laws 2700, 2711.

[23] *Lundgren v. State*, 434 S.W.3d 594, 598 (Tex. Crim. App. 2014) (citing *Milburn v. State*, 201 S.W.3d 749, 752 (Tex. Crim. App. 2006)).

[24] To be clear, we decide here that Appellant's conviction is not a "final conviction" for purposes of determining the applicability of the statute at issue. Under well-established law it isn't. *See Jones v. State*, 711 S.W.2d 634, 636 (Tex. Crim. App. 1986) ("The law is settled that a conviction from which an appeal has been taken is not considered to be a final conviction until the conviction is affirmed by the appellate court and that court's mandate of affirmance becomes final."). However, this aspect of our holding should not be mistaken as a suggestion that we are holding that the governor's clemency power only attaches after a mandate issues after a direct appeal. Indeed, the law is well-settled in that regard; the governor's clemency power applies at any point "after conviction" regardless of whether mandate has issued on direct appeal. *Ex parte Giles*, 502 S.W.2d 774, 784 (Tex. Crim. App. 1973). Rather, our holding is that even though the clemency power can apply to a case before the conviction becomes final on appeal, this legislative amendment does not usurp or unduly interfere with that clemency power because it is a valid exercise of the Legislature's authority to make or repeal laws rather than the fundamental equivalent of a pardon. Of course, case law in both inquiries necessarily refer to the word "conviction." But determining whether the phrase "final conviction" applies to a case pending on appeal and whether clemency power applies "after conviction" are two separate and unrelated issues.

conduct and that the amendments apply to Appellant, we turn to the contested issue in this case: whether the amendments and the savings clause, in particular, violate the Separation of Powers Clause of the Texas Constitution by either (1) usurping the governor's clemency power, or (2) unduly interfering with it.

## A.   Standard of Review

We review *de novo* a challenge to the constitutionality of a statute.[25] We afford great deference to the Legislature and presume that the statute is constitutional and that the Legislature has not acted unreasonably or arbitrarily.[26]  The party challenging the statute normally bears the burden of establishing its unconstitutionality.[27]

## B.   Separation of Powers

The separation of powers among branches of government is fundamental in our country's history.  Despite not using the terms "separation of powers" in the United States Constitution, the principle has been applied since its foundation.[28]  The Texas Constitution expressly

---

[25]  *Salinas v. State*, 464 S.W.3d 363, 366 (Tex. Crim. App. 2015).

[26] *Ex parte Lo*, 424 S.W.3d 10, 14-15 (Tex. Crim. App. 2013).

[27] *Id*. at 15.

[28] *See* Harold H. Bruff, *Separation of Powers Under the Texas Constitution*, 68 Tex. L. Rev. 1337, 1338-40 (1990).

provides for the separation of powers in Article II § 1; it states:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confined to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another; and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.[29]

Although the language of the separation of powers provision is rigid, there is natural overlap in the duties proscribed to each branch. Not every instance of overlap, therefore, will amount to a violation of separation of powers.[30]

We have recognized that the Separation of Powers Clause may be violated in either of two ways. First, it is violated when one branch of government assumes, or is delegated, to whatever degree, a power that is more "properly attached" to another branch.[31] When a branch of government violates separation of powers in this way, it is said to have

---

[29] Tex. Const. art. II, § 1.

[30] *See Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239-40 (Tex. Crim. App. 1990) (comparing two constitutional provisions granting similar powers to the judicial and legislative branches and noting that determining when a violation occurs is "no simple task"). Although there is natural overlap in the duties associated with the powers granted to each branch, each branch may only exercise those powers granted to it. *See Giles*, 502 S.W.2d at 780. No one branch has power over the other branches and any attempt by one branch to interfere with the powers of another is null and void. *See id*.

[31] *Armadillo Bail Bonds*, 802 S.W.2d at 239 (citing *Giles*, 502 S.W.2d at 780).

usurped another branch's power.[32]  The provision is also violated when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers.[33] This undue influence test "'takes the middle ground between those who would seek rigid compartmentalization and those who would find no separation of powers violation until one branch completely disrupted another branch's ability to function.'"[34]  In order to determine whether the Legislature violated separation of powers, we must first determine the extent of the Executive's power to grant clemency and the extent of the Legislature's power to create and repeal laws.

In drafting a constitution, the people of a state are at liberty to grant any branch of government the power to grant clemency.  Since 1845, every version of the Texas Constitution, including the first, has granted the clemency power to the Executive Branch.  Clemency power rested exclusively in the Executive branch until 1935 when the Texas Constitution was amended to allow for the creation of what we now

---

[32] *See Giles*, 502 S.W.2d at 786.

[33] *Armadillo Bail Bonds*, 802 S.W.2d at 239 (citing *Rose v. State*, 752 S.W.2d 529, 535 (Tex. Crim. App. 1987)).

[34] *State v. Williams*, 938 S.W.2d 456, 460 (Tex. Crim. App. 1997) (quoting *Armadillo Bail Bonds*, 802 S.W.2d at 239).

regard as community supervision within the criminal justice system.[35]

The Texas Constitution grants the Executive branch this power in Article

IV, Section 11.  It provides, in relevant part:

> In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction or successful completion of a term of deferred adjudication community supervision, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishment and pardons [.][36]

We have interpreted the term "after conviction" to mean after the entry

of a guilty verdict.[37]   Therefore, the governor may execute this power

while a case is pending on appeal.[38]

Consistent with the constitutional provision that prohibits any one

branch of the government from exercising control over any other branch,

we have long recognized that this Court has no power to control nor right

---

[35] TEX. CONST. art. IV, § 11A, enacted by Acts 1935 Leg., H.J.R. No. 46, § 1, p. 1226, adopted Aug. 24, 1935.  According to the "Interpretive Commentary" this amendment was ultimately passed to remove all doubt created by our decision in *Snodgrass v. State*, 150 S.W. 162 (1912) that courts can constitutionally suspend pronouncement of sentence without usurping the pardoning power of the governor.

[36] TEX. CONST. art. IV, § 11.

[37] *Giles*, 502 S.W.2d at 784.

[38] *See, e.g., Whan v. State,* 485 S.W.2d 275, 277 (Tex. Crim. App. 1972) (noting that the proper course of action where the Governor has commuted a death sentence to a sentence of life in prison while the case was pending on appeal was to affirm the trial court's judgment because the commutation did not affect the judgment).

to review the Governor's exercise of his clemency power.[39]  Our sister court has spoken eloquently on the constitutional limits on the Legislature's authority:  "[T]he Legislature is without authority to add or take away from those powers or duties or substantially alter them."[40]  So have we.[41]  And, without an express limitation within the Constitution, we presume that a delegation of authority to one branch of government is exclusive.[42]  Thus, the Legislature may not usurp or unduly interfere with the Governor's authority to exercise his clemency power after conviction.

Of course, this cuts both ways.  Our Constitution vests all

---

[39] *Ex parte Gore*, 4 S.W.2d 38, 39 (Tex. Crim. App. 1928) (denying habeas corpus relief to an inmate who sought to have this Court grant him parole after the Governor had denied him parole).

[40] *Ferguson v. Wilcox*, 28 S.W.2d 526, 533 (Tex. 1930) (citing *City of Denison v. Municipal Gas Co.*, 3 S.W.2d 794, 798 (Tex. 1928)).  In *Ferguson*, the Texas Supreme Court considered the constitutionality of a statute that would have allowed an impeached Governor to hold office again despite a constitutional prohibition contained in Article XV, Section 4 of the Texas Constitution.  *Ferguson*, 28 S.W.2d at 534 ("The convention in excepting impeachment from the pardon power of the Governor, while at the same time providing the method and pardon in cases of treason, evidently intended that an unfaithful officer convicted of impeachment should not again be permitted to hold office in this state."); *see also* Tex. Const. art. XV, § 4 ("Judgment in cases of impeachment shall extend only to removal from office, and disqualification from holding any office of honor, trust or profit under this State.").  The determination in *Ferguson* that the statute violated the Texas Constitution had nothing to do with the character or effect of a pardon.

[41] *Ex parte Rice*, 72 Tex. Crim. 587, 596 (1913) ("The Constitution of this State granting that power [clemency power] to the Governor, it is for him alone to exercise without restraint or restriction from any source, other than the sovereigns of the state who wrote and adopted the Constitution."); *see also Ex parte Wolters*, 64 Tex. Crim. 238, 248 (1911) (noting that the Legislature is generally confined to legislative matters and "in no instance" can it act as a judicial branch of government unless such power is expressly conferred upon it by the Constitution).

[42] *Ferguson*, 28 S.W.2d at 532; *Giles*, 502 S.W.2d at 780.

lawmaking power in the Legislature of the State of Texas.[43] Provisions of our Constitution serve only as a limitation on power of the Legislature and not as a grant of power.[44] This includes the power to make, alter, and repeal laws, in accordance with the other provisions of the Constitution.[45] Of importance here, the Legislature possesses the sole authority to establish criminal offenses and prescribe punishments.[46] The Governor's clemency power has never extended so far that he may presume to exercise or substantially interfere with the Legislature's prerogative to make, alter, and repeal laws, let alone define criminal offenses or fix punishment for those offenses.[47] Neither does this clemency power grant appellate jurisdiction to the governor over the acts of the judicial branch.[48] To resolve this tension among the different branches of

---

[43] TEX. CONST. art. III, § 1.

[44] *Bexar Cty. Hosp. Dist. v. Crosby*, 327 S.W.2d 445, 447 (Tex. 1959) ("There can be no dispute but that in this State the provisions of the Constitution serve only as a limitation on the power of the Legislature, and not as a grant of power.").

[45] *Walker v. Baker*, 196 S.W.2d 324, 328 (Tex. 1946).

[46] *Blackwell*, 500 S.W.2d at 104.

[47] *Baker v. State*, 158 S.W. 998, 1002 (Tex. Crim. App. 1913) ("While the power of the Governor alone, under our Constitution, to grant pardons cannot be questioned, yet it is equally beyond question that the Legislature has the sole power to define offenses and fix the punishment to be inflicted on the offender.").

[48] *Jones v. State*, 147 S.W.2d 508, 511 (Tex. Crim. App. 1941) ("In our state, as in the other states of the Union, the executive is not given appellate jurisdiction over the acts of the judicial branch of the government, and without which he can have no power to destroy its judgments and decrees.").

government, we must examine the character and effect of an executive pardon as well as the character and effect of a legislative repeal as such acts were understood at the time our Constitution was first ratified.

### 1. What is the character and effect of a pardon?

The Legislature's decision to make, alter, and repeal laws can violate the separation of powers when it grants trial courts the discretion to lower a particular defendant's sentence after sentencing or exempt a defendant from serving his or her sentence based on new legislation.[49] However, when amendments to penal provisions invalidate an underlying conviction, the Legislature has validly exercised its power to determine criminal conduct and it has not usurped the governor's power to grant clemency.[50]  A look into the meaning of clemency and the understanding of the effect and the character of a pardon at the time our constitution was first passed by the citizens of Texas makes this clear.

The governor's power to grant clemency encompasses three

---

[49] *See, e.g., Blackwell*, 500 S.W.2d at 104 (invalidating statute that allowed defendants previously convicted of a drug offense to petition the trial court for re-sentencing); *Giles*, 502 S.W.2d at 786 (invalidating statute that allowed a defendant to petition the sentencing court to re-sentence him under newly enacted punishment ranges).

[50] *See, e.g., Cox v. State*, 234 S.W. 531 (Tex. Crim. App. 1921) (noting that a statutory amendment removing the act of possessing equipment for making intoxicating liquor from the forbidden conduct in a penal offense constitutes a repeal of the law under which the defendant was convicted).

methods of clemency: reprieve, commutation, and pardon.[51] A "reprieve" delays the execution of a judgment; it merely postpones the sentence for a time.[52] We have defined "commutation" as a "change of the punishment assessed to a less severe one."[53] A "pardon" is "an act of grace proceeding from the power entrusted with the execution of the laws which exempts the individual from the punishment the law inflicts for a crime he has committed."[54]

From these definitions, it is apparent that the governor's clemency power allows the governor to affect the punishment an individual is subjected to. The clemency power does not allow the governor to affect the underlying conviction.[55] This is so because a pardon, and other forms of clemency, forgive only the penalty and do not allow the courts to "'forget either the crime or the conviction'"; a pardon implies guilt and does not obliterate the fact of the commission of the crime and the

---

[51] TEX. CONST. art. IV, § 11.

[52] *Ex parte Black*, 59 S.W.2d 828, 829 (Tex. Crim. App. 1933).

[53] *Blackwell*, 500 S.W.

[54] *Snodgrass*, 150 S.W. at 166.

[55] This would seem to be self-evident from the text of the Constitution which limits the governor's exercise of his clemency power to "after conviction or successful completion of a term of deferred adjudication community supervision[.]" TEX. CONST. art. IV, § 11.

conviction.[56]  This has always been the understanding of governor's clemency power as it has been enshrined in our Texas Constitution.

We recognize, however, that we have not always used consistent language in this regard.  For example, in *Snodgrass v. State*, we held that the Legislature cannot delegate to courts the ability to suspend a sentence after conviction, though that case has since been undermined by a Constitutional amendment.[57]  Additionally, in *Carr v. State* we stated that "[a] full pardon blots out the existence of guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense."[58]   This language, however, was taken uncritically and

---

[56] *See Cuellar v. State*, 70 S.W.3d 815, 836 (Tex. Crim. App. 2002) (Keasler, J., dissenting) (quoting *Watkins v. State*, 572 S.W.2d 339, 341 (Tex. Crim. App. 1978)); *Jones,* 147 S.W.2d at 510; *see also Ex parte Freeman*, 486 S.W.2d 556, 557 (Tex. Crim. App. 1972) ("Even though a commutation limits and modifies the punishment assessed at the time of conviction, it has no effect on the adjudged guilt of the prisoner."); *Black*, 59 S.W.2d at 829 ("It [reprieve] does not and cannot defeat the ultimate execution of a judgment of the court; it merely delays it.").

[57] *Snodgrass*, 150 S.W. at 167 (op. on reh'g) ("What we did hold was that the Legislature had no power to confer on the trial court authority to remit the punishment after a conviction had been obtained and penalty assessed by a verdict of the jury; this power being conferred on the Governor by the Constitution, and if under the guise of 'suspension of sentence' this object was sought to be obtained, the act would be void, for the word 'suspension' could not be given such construction"); TEX. CONST. ART. IV § 11A ("The Courts of the State of Texas having original jurisdiction of criminal actions shall have the power, after conviction, to suspend the imposition or execution of sentence and to place the defendant upon probation and to reimpose such sentence, under such conditions as the legislature may prescribe.").

[58] 19 Tex. Ct. App. 635, 661 (1885) (citing *Ex parte Garland*, 71 U.S. 333, 380 (1867)).  It is worth noting, however, that each of the three judges participating in *Carr* wrote separate opinions, and the Presiding Judge did not join the majority because he did not agree with all of the views expressed by the majority.  *Id.* at 660 ("With regard to the effect and character of the pardon granted by the Governor to the witness Hester, I cannot

unnecessarily from the United States Supreme Court case, *Ex parte Garland*. In *Ex parte Garland*, the United States Supreme Court had declared that: "all the authorities concur[:] A pardon reaches both the punishment prescribed for the offence and the guilt of the offender[.]"[59]

But *Carr* did not deal with the question of whether a pardon actually removed a conviction.[60] It dealt with whether the governor's pardon at issue had removed a legal disability flowing from the conviction, namely whether the pardon had restored a witness's competency as a witness.[61] Neither did *Garland* for that matter. *Garland* considered a legislative act that prevented a defendant from practicing law in federal court despite receiving a full pardon for a previous conviction for treason (based upon

---

concur in the views expressed in Judge Hurt's opinion."). The cite to *Garland* appears within the Presiding Judge's side opinion.

[59] 71 U.S. at 380.

[60] The bone of contention amongst the judges in *Carr* appears to be on the effect of a partial or conditional pardon, not a full pardon. *Compare Carr*, 19 Tex. Ct. App. at 658 (Hurt, J.) ("The effect, therefore, of a pardon with a subsequent condition is the same as a full unconditional pardon until the condition is broken.") *with* 19 Tex. Ct. App. at 662 (White, P.J.) ("If the doctrine announced by Judge Hurt be correct, then there is absolutely no difference whatever between a full pardon and one upon a subsequent condition."). More importantly, the issue before the Court was not whether the pardon had actually removed the conviction itself, it was whether the pardon had removed the legal disabilities associated with the conviction. *Id.* at 663 (White, P.J., ) ("I am of opinion the witness Hester was wholly incompetent to testify, because he is a convicted felon whose disabilities have not been removed; and that the court erred in permitting him to testify over objection of defendant.").

[61] *Carr*, 19 Tex. Ct. App. at 661.

participating in the Civil War as part of the Confederacy).[62]  The act at issue in *Garland* was declared unconstitutional because it undermined the President's removal of the consequences of a past conviction, not because it removed the conviction itself.[63]  The language we took from *Garland* suggesting that a pardon "blots out the existence of guilt" was not necessary to the resolution of the case.[64]

Indeed, prior to *Garland*, the United States Supreme Court had already explained that "a pardon is an act of grace, proceeding from the power intrusted with the execution of the laws, which exempts an individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed."[65]  The holding in *Garland* was consistent with this understanding of the effect of a pardon; the  language quoted in *Carr* was not.  And the United States Supreme Court seems to have rejected  this language when it later recognized that the acceptance of a pardon actually implies a confession of guilt.[66]

---

[62] 71 U.S. at 375-76.

[63] *Id*. at 381.

[64] *See In re North*, 62 F.3d 1434, 1437 (D.C. Cir. 1994) (noting that *Garland* did not rest its judgment on the theory that the pardon at issue had blotted out Garland's guilt).

[65] *United States v. Wilson*, 32 U.S. 150, 160 (1833).

[66] *Burdick v. United States*, 236 U.S.  79, 94 (1915).

The same can be said of the decision in *Hunnicutt v. State*, which we relied upon in *Carr*. There, we considered whether a former convict who benefitted from a conditional pardon (conditional because it did not take effect until the successful completion of his sentence) had regained his competency to testify by virtue of receiving that pardon.[67] We quoted Bishop on Criminal Law for the proposition that "'[a] full pardon absolves the party from all the legal consequences of his crime and of his conviction, direct and collateral, including the punishment, whether of imprisonment, pecuniary penalty, or whatever else the law has provided.'"[68] We held, as we would later hold in *Carr*, that the pardon had removed a legal disability that arose from that conviction, not the conviction itself.

We later summarized these holdings in *Warren v. State*. There, we considered whether a pardon for a 1889 murder would allow the defendant to file an affidavit in support of an application to have his sentence suspended.[69] Though the pardon purported to be a full pardon, it took effect at the expiration of his sentence, rendering it a conditional

---

[67] *Hunnicutt v. State*, 18 Tex. Ct. App. 498, 517 (1885). *Hunnicutt* was a decision of the Texas Court of Appeals before it became the Texas Court of Criminal Appeals.

[68] *Id*. at 519 (quoting 1 Bish. Crim. Law § 916 (7th ed)).

[69] *Warren v. State*, 74 S.W.2d 1006, 1007 (Tex. Crim. App. 1934).

one.  Citing to many cases including *Carr* and *Hunnicutt*, Judge Lattimore explained that "None of the authorities known to this court undertake to hold that any character of pardon less than a full pardon, would wipe out and obliterate the legal consequences of a felony conviction[.]"[70]  Again, we explained that a full pardon only removes the legal consequences of the felony conviction, not the conviction itself.

While we did reconsider the scope of the clemency power in *Jones v. State*, we did not stray from our already well-established understanding that a pardon acts as a removal of the legal disabilities associated with a conviction, rather than a removal of the conviction itself.[71]  As it was with *Carr* and *Hunnicutt*, the issue in *Jones* focused on whether a pardon had limited the consequences flowing from a conviction.  Specifically, we addressed whether a prosecutor could use a prior felony conviction to enhance the defendant's offense if the defendant had been pardoned for the prior felony.[72]  We acknowledged that this very question had been decided in the defendant's favor thirteen

---

[70] *Id.*  Notably, Judge Hawkins concurred in part and dissented in part, stating in his opinion that he would reach the same conclusion even if the pardon at issue had been a full pardon.  *Id.* at 1008-09 (Hawkins, J., concurring in part and dissenting in part).

[71] *See* 147 S.W.2d at 511.

[72] *Id*. at 509.

years earlier in *Scrivnor v. State*.[73]  However, we took the opportunity to thoughtfully examine the extent of the pardon power in Texas.

We noted that a pardon under our three branch system of government is intrinsically different than a pardon from the King under English Government.[74]  Under English Government, the King had the power to set aside orders of the court; he alone could do so because the courts had no power over their final judgments.[75]  In contrast, the Executive branch in our form of government, we explained, has no such power; the Judiciary has the sole authority over the entry of final judgments.[76]  We recognized that "[h]e can pardon, but, 'as the very essence of a pardon is forgiveness or remission of penalty, a pardon implied guilt; it does not obliterate the fact of the commission of the crime and the conviction therefor[.]'"[77]

We also noted that while earlier editions of Bishop's "learned treatise" had described the pardon power expansively, his more recent

---

[73] *Id*. (citing *Scrivnor v. State*, 20 S.W.2d 416 (Tex. Crim. App. 1928) (holding that the State may not use a pardoned conviction for the purpose of enhancing the penalty in a subsequent case)).

[74] *Id*.

[75] Id.

[76] *Id*. at 510; *see also Lo*, 424 S.W.3d at 29.

[77] *Jones*, 147 S.W.2d at 510.

edition had recognized that the pardon power was necessarily more narrowly drawn in a constitutional government based upon a separation of powers.[78] Specifically, Bishop's 9th Edition examined cases from around the country[79] and the United States Supreme Court[80] and recognized that a pardon does not have the effect of "wiping out" a conviction when, by committing a subsequent offense, the defendant proved himself unworthy of the governor's grace and that such a pardon does not relieve the offender from any future penal consequences.[81] After a thorough examination of these issues, we concluded that "[w]hatever might have been the force and effect of the pardon" in earlier cases was immaterial due to the inherent limits on the governor's clemency power.[82]

The Texas Constitution does not grant the governor the power to

---

[78] *Id.*

[79] *See, e.g., United States v. Swift*, 186 F. 1002, 1016-17 (N.D. Ill. 1911) ("Amnesty or pardon obliterates the offense, it is true, at least to such an extent that for all legal purposes the one time offender is to be relieved in the future from all its results; but it does not obliterate the act themselves. . . . it does not close the judicial eye to the fact that once he had done the acts which constituted the offense[.]"); *State v. Edelstein*, 262 P. 622, 630-32 (Wash. 1927) (examining the weight of authority regarding pardoned offenses and determining that a pardoned offense may be used for enhancement purposes); *Herndon v. Commonwealth*, 48 S.W. 989, 990 (Ky. 1899) ("The pardon relieved the convict of the entire penalty incurred by the offense pardoned, and nothing else or more.").

[80] *See Carlesi v. New York*, 233 U.S. 51, 59 (1914) (upholding the New York Court of Appeal's decision, which held that a conviction was not obliterated by a pardon, but remained a fact in the past history of the defendant).

[81] *Jones*, 147 S.W.2d at 510.

[82] *Id.* at 511.

destroy judicial judgments and decrees.[83] It never has. While the clemency power permits the governor to discharge a convict from further penal service, he exercises no influence on the judgment of conviction nor does he have the power to do so.[84] With this understanding of the scope of pardons under the clemency power, we overruled in *Jones* all former decisions to the extent that they had incorrectly interpreted the pardon power too expansively.[85] But in reaching this conclusion, we did not alter our established understanding that a pardon only removes the consequences of conviction rather than the conviction itself. Rather, we recognized that some consequences of a conviction cannot be removed despite a pardon.[86]

---

[83] *Id.*

[84] *Id*.

[85] *Id*. at 511-12.

[86] *Id.* at 511 ("In our state, as in the other states of the Union, the executive is not given appellate jurisdiction over the acts of the judicial branch of the government, and without which he can have no power to destroy its judgments and decrees. He must take them as he finds them. In penal cases it becomes the duty of the executive branch to enforce the laws as written and interpreted. Clemency power is vested in the Governor to the extent only that he can remit fines imposed which remain uncollected and discharge the convict from further penal service. Prior to his proclamation so doing he exercises no influence on the judgment of conviction. He has no power to restore the convict to his license which may have been cancelled by reason of his conviction. He cannot set aside the divorce which the convict's spouse has obtained on the ground of such conviction. He cannot restore him in his social standing contrary to public opinion and the edicts of the social order, or societies to which he once belonged. In civil actions for libel the publisher of the story of plaintiff's conviction may prove the fact even though the full pardon has been granted.").

Since *Jones*, we have continuously held that a pardon does not obliterate the underlying conviction; it merely removes the legal disabilities associated with that conviction. The United States Supreme Court shares this understanding and has for over a century.[87] The State has certainly not argued that *Jones* should be overruled in favor of a brand new understanding of the character and effect of a pardon. And announcing a new, more expansive understanding and holding the legislative enactment at issue unconstitutional would run afoul of our duty to presume constitutionality and avoid such constitutional conflicts.[88]

When the governor exercises his clemency power, the underlying criminal conviction remains. The pardoned conviction can subsequently be used to deny an individual bail[89] or probation,[90] and to enhance punishment in a later proceeding.[91] Although an individual may ultimately remove a pardoned conviction from his or her criminal records

---

[87] *See, e.g., Burdick*, 236 U.S. at 94; *Carlesi*, 233 U.S. at 59; *Wilson*, 32 U.S. at 160.

[88] *See, e.g., Ex parte Perry*, 483 S.W.3d 884, 903 (Tex. Crim. App. 2016).

[89] *See, e.g., Runo v. State*, 556 S.W.2d 808, 809 (allowing a conviction to deny bail in a subsequent proceeding despite a pardon).

[90] *See, e.g., Taylor v. State*, 612 S.W.2d 566, 571 (Tex. Crim. App. 1981) (using a pardoned conviction to deny probation).

[91] *See, e.g., Gaffney v. State*, 575 S.W.2d 537, 541 (Tex. Crim. App. 1978) (permitting use of a conviction for enhancement in a later proceeding, despite a pardon).

through an expunction, the expunction comes from a judicial process, not from the governor's grant of a pardon.[92]  Overruling *Jones* would render all of these subsequent uses of a pardoned conviction unconstitutional. And yet it would not alter our understanding that a pardon only removes the legal consequences of a conviction, not the conviction itself.

  *2. What is the character and effect of legislative repeal?*

  In contrast, we have repeatedly applied legislative enactments that repeal criminal laws to cases pending on appeal.  When the Legislature decriminalizes conduct and allows for the retroactive application of the decriminalizing, pending convictions predicated on that conduct are invalid.[93]  The appropriate remedy, in those instances, is to reverse the

---

[92] A pardon, based on actual innocence or another reason, grants an individual the right to expunction, but the pardon itself does not remove the offense from the person's criminal records.  S*ee* Tex. Code Crim. Proc. Ann. art. 55.01(a)(1)(B) (a person is entitled to have all records and files relating to the arrest expunged if the person was convicted and subsequently pardoned on the basis of actual innocence with respect to that offense, if the applicable pardon clearly indicates on its face that it was granted on the basis of the person's actual innocence, or if the conviction is pardoned for another reason).  A pardoned individual must petition the appropriate court and obtain an expunction order for an expunction of the pardoned offense to occur.  *See Id*. at art. 55.02 § 1a (actual innocence pardons); *Id*. at § 2 (pardons for another reason); *see also Ex parte Green*, 373 S.W.3d 111, 113 (Tex. App.—San Antonio 2012, no pet.) ("The right to expunction is a statutory privilege.").

[93] *See, e.g., Williams v. State*, 476 S.W.2d 307, 309 (Tex Crim. App. 1972); *Mendoza v. State*, 460 S.W.2d 145, 147 (Tex. Crim. App. 1970).  The State argues that *Mendoza* and *Williams* are inapplicable because they were based on the savings provision contained in article 14 of the Penal Code of 1925, which has since been repealed, and they predate our decision in *Giles*.  However, article 14 of the Penal Code of 1925 and our holdings in *Mendoza* and *Williams* were premised on the common law principle that by repealing a penal provision, the Legislature indicates that the conduct removed is no longer to be prosecuted

conviction and dismiss the prosecution.[94]

During the same time period in which our Court discussed the character and effect of a pardon, it applied the legislative repeal of criminal laws to cases pending on appeal unless the legislature specifically indicated that repeal should not apply to those cases. In 1907, for example, we considered a case where the defendant had been convicted of improperly catching and selling game fish in Harrison County.[95] But, while the case was pending on appeal, a legislative amendment decriminalizing the defendant's behavior took effect, and the defendant sought a reversal of his conviction on appeal.[96]

In that case, we reversed the conviction, recognizing that there can be no penalty or criminality in violating a repealed statute.[97] This is

---

as a crime. *Ex parte Mangrum*, 564 S.W.2d 751, 753-54 (Tex. Crim. App. [panel op.] 1978). When a conviction is pending on appeal based on such conduct, the conviction should be reversed because there is no longer a crime to be prosecuted. *Id*. at 753. Although we now have a general savings provision which alters this rule and provides that an amendment or repeal does not affect any violation of the statute or any penalty, forfeiture, or punishment incurred under the statute before its amendment or repeal, the Legislature is free to enact a more specific savings provision when repealing or amending a statute. *Id*. at 755 (referencing the general savings provision currently found at TEX. GOV'T CODE ANN. 311.031(a)(3) (West 2013)). When the Legislature enacts a savings provision similar to the common law principle, we will enforce it accordingly so long as it does not violate the Texas Constitution.

[94] *Williams*, 476 S.W.2d at 309; *Mendoza*, 460 S.W.2d at 147.

[95] *Hall v. State*, 106 S.W. 149, 149 (Tex. Crim. App. 1907).

[96] *Id*. at 150.

[97] *Id*.

because the legislative act of repealing the statute upon which the conviction is based annulled the conviction.[98]   We have applied this understanding of the character and effect of a legislative repeal in a number of cases.[99]

Indeed, this understanding of the effect of a legislative repeal of a criminal statute has been characterized as "universal."[100]  This common-law rule can be traced back to the 1809 decision from the United States Supreme Court in *Yeaton v. United States*, which held that "it has been long settled, on general principles, that after the expiration or repeal of a low, no penalty can be enforced, no punishment inflicted, for violations of hte law committed while it was enforced, unless some special provision be made for that purpose by statue."[101]  This was the understanding held by our framers regarding the character and effect of a legislative repeal when our first Texas Constitution was ratified.  Yet, out of all the many

---

[98] *Kenyon v. State*, 23 S.W. 191, 191 (Tex. Crim. App. 1892).

[99] *Hall*, 106 S.W. at 150 (citing *Kenyon*, 23 S.W. at 191; *Chaplin v. State*, 7 Tex. Ct. App. 87 (1879); *Tuton v. State*, 4 Tex. Ct. App. 472 (1878); *Montgomery v. State*, 2 Tex. Ct. App. 618 (1877); *Hubbard v. State*, 2 Tex. Ct. App. 506 (1877); *Sheppard v. State*, 1 Tex. Ct. App. 522 (1877); *Wall v. State*, 18 Tex. 682 (1857)).

[100] *See, e.g., Bell v. Maryland*, 378 U.S. 226, 230 (1964) (noting that Maryland follows "the universal common-law rule" that requires a dismissal of all proceedings after a legislature repeals a criminal statute if the proceeding had not yet reached final disposition in the highest court authorized to review it).

[101] 9 U.S. 281, 283 (1809).

cases analyzing the character and effect of our Legislature's repeal of a criminal statute,  there are no instances in which this Court or our sister court held that the legislative repeal of a criminal statute amounted to the functional equivalent of a pardon.  Had the case before us arisen at the time our framers drafted the Texas Constitution, it is beyond question that Appellant's conviction would have been reversed without any concern regarding the usurpation of the governor's clemency power.

Moreover, the cases in which we have found the Legislature actually usurped the governor's clemency power did not deal with a legislative repeal; they involved legislation which granted previously convicted defendants the ability to petition the sentencing court to hold a re-sentencing hearing to apply a new statute.  In those cases, the legislation at issue continued to hold the defendants's conduct as a criminal offense; however it allowed them to be re-sentenced under new, less severe, sentencing provisions.  The underlying convictions of the defendants in those cases remained unaffected by the amended legislation.

For example in *State ex rel. Smith v. Blackwell*, we examined a section of the Texas Controlled Substances Act which permitted any person who had been convicted of an offense involving marihuana, whether the conviction was pending on appeal or final, to petition the

court for resentencing under new sentencing provisions.[102] Despite referring to the action as "resentencing," the statute permitted courts to impose a less severe punishment, i.e. a commutation, thus violating the Separation of Powers Clause.[103] We held it was unconstitutional for the Legislature to allow courts to change sentences after a final conviction.[104]

Similarly, in *Ex parte Giles*, we considered a portion of the Texas Controlled Substances Act, which permitted an individual whose action was pending on appeal or commenced after the effective date of the section in question, to elect punishment under new sentencing provisions.[105] Again, the section we addressed permitted trial courts to set aside the earlier sentence and hold a new sentencing hearing to impose a new, less severe sentence, i.e. a commutation, in violation of the Separation of Powers Clause.[106] We held it was unconstitutional for the Legislature to allow courts to change sentences at any point after conviction and sentencing, whether or not the conviction was final.[107]

---

[102] 500 S.W.2d at 99.

[103] *Id*. at 104.

[104] *Id*.

[105] 502 S.W.2d at 786.

[106] *Id*.

[107] *Id*.

In both cases, this Court took issue with the new sentencing hearings that would necessarily result in lower sentences imposed on the defendants. However, the present case presents a different scenario. The Legislature did not authorize new sentencing hearings that would allow courts to change sentences which had already been imposed when it amended Section 841 of the Health and Safety Code. The Legislature categorically determined that certain conduct was not criminal; the amendments reflecting this decision affected the validity of convictions, not just sentences.[108] There was no transfer of clemency discretion from the Governor to the Judiciary.

This difference is important in recognizing how the amendments to Section 841 conform with our Separation of Powers Clause. The Executive has the power to exercise discretion to grant clemency and affect sentences at any stage after an individual is convicted based upon the individual characteristics of each defendant.[109] The Legislature has the power to make, alter, and repeal laws and categorically criminalize or

---

[108] We noted a similar problem with the statute at issue in *Snodgrass*. *See Baker*, 158 S.W. at 1003 (noting that one problem with the legislation at issue in *Snodgrass* was that it provided that the trial court "should hold another trial, hear evidence and determine whether or not he would relieve from punishment fixed by the jury and judgment of conviction").

[109] Tex. Const. art. IV, § 11(b).

decriminalize behavior.[110]  The Legislature validly executed this power when it removed Appellant's conduct from the list of conduct subject to prosecution under the Health and Safety Code.  In enacting the savings clause, the Legislature permitted those whose convictions were not final to benefit from the new law.  Although the ultimate effect of the amendments removes the consequence of a conviction, the reason is due to the invalidity of the conviction itself, not a commutation or pardon of the sentence.

The court of appeals and the State relied heavily on *Giles* in their opinion and argument, respectively, in this case.  In *Giles*, we noted several issues which would arise if we upheld the statute which permitted courts to resentence defendants.[111]  A look into those issues demonstrates how the statute at hand is different than that at issue in *Giles*.  First, we noted that in order to resentence a defendant under the provisions of the act at issue in *Giles*, the underlying jury verdict upon which the judgment was based would have to be set aside in whole or in

---

[110] TEX. CONST. art. III, § 1; *see also Baker*, 158 S.W. at 1003 (upholding a statute allowing a trial court to suspend sentence because "the law is so written that it becomes a part of each article of the Code, prescribing the punishment").

[111] 502 S.W.2d at 782-83.

part.[112]  Setting it aside in whole presented a problem because it would disrupt the conviction, and the defendant still committed a crime which warranted punishment.[113]  Setting aside only the part of the verdict assessing punishment would deprive the defendant of his right to have a jury assess the punishment for the act in question.[114]  These are not problems in the present case because the Legislature has determined that the underlying conduct is not a crime and therefore the Appellant is not guilty of criminal conduct warranting a conviction.  Additionally, in the absence of a valid conviction, Appellant no longer needs to be punished. If Appellant had a jury verdict in this case, we could set it aside without the issues addressed in *Giles*.

Another issue we noted in *Giles* was that the act in question made conduct which was a felony a misdemeanor.[115]  We questioned whether the court imposing a new sentence could find the defendant guilty of a misdemeanor, whether the underlying indictment even supported such action, and whether the district courts would have misdemeanor

---

[112] *Id*. at 782.

[113] *Id*.

[114] *Id*.

[115] *Id*. at 782-83.

jurisdiction to dispose of the cases in such a way.[116]   Again these issues are not present in the case at bar because the entire conviction is invalidated by virtue of the repeal, not merely altered.

The Legislature usurps another branch's power when it assumes, or is delegated, to whatever degree, a power that is more "properly attached" to another branch.[117]   Repealing laws and decriminalizing conduct has always been part of the Legislature's delegated power.  The Legislature has not assumed the power to grant clemency because decriminalizing conduct through the use of legislative amendments is not and has never been part of the executive's discretionary authority to forgive the legal consequences flowing from a conviction.

> 3.    *The Legislature did not unduly interfere with the Executive's power to grant clemency.*

Separation of powers is also violated when one branch unduly interferes with another branch such that the other branch cannot effectively exercise its constitutionally assigned powers.[118] Therefore, in order to determine whether the amendments to the Health and Safety Code unduly interfere with the Executive branch's power, we consider the

---

[116] *Id*.

[117] *Armadillo Bail Bonds*, 802 S.W.2d at 239.

[118] *Id.*

impact of the amendments on the Executive's exercise of its constitutionally assigned power.[119] In doing so we recognize the interplay amongst our branches of government and take a middle-ground approach between rigid compartmentalization of each branch's powers and allowing one branch to completely disrupt another branch's ability to function.[120]

The amended version of Section 841 of the Health and Safety Code, and its savings clause, affects the validity of certain convictions obtained under Section 841.085 of the Health and Safety Code. It does not prevent the governor from granting clemency to those prosecuted under Section 841.085 whose convictions remain valid. In particular, it does not prevent the governor from granting clemency to individuals whose convictions have already become final under the previous law. In short, the Legislature has not prevented the Executive branch from effectively exercising its power to grant clemency in general, nor with regard to sexually violent predators convicted under Section 841 of the Health and Safety Code. Therefore, the statute does not unduly interfere with the Executive's power to grant clemency.

## III. Conclusion

---

[119] *Id.*

[120] *Id.*

The Legislature does not violate separation of powers when it validly exercises its power to repeal criminal laws and does so without granting clemency power to the courts.   In the present case, the Legislature has done just that.  Both our Legislature and our governor have decided that a sexually violent predator's failure to comply with his sex offender treatment program as part of his civil commitment should be resolved through the civil commitment program rather than give rise to a new criminal conviction.  The Legislature was within its power to make this difficult legislative change and apply that change to defendants whose criminal cases were pending on appeal at the time the amendment became effective. We defer to the statute crafted by our Legislature and signed by our governor because this legislative act did not violate the Separation of Powers Clause in the Texas Constitution.  Accordingly, we vacate Appellant's judgment of conviction.[121]

Filed: December 20, 2017

Publish

---

[121] Appellant remains subject to the Texas Civil Commitment Office's tiered program of treatment and supervision.  He will remain in the civil commitment program until a court determines that he is no longer likely to engage in a predatory act of sexual violence.  The Texas Civil Commitment Office determines which tier of the program, i.e. level of restrictions, Appellant will be placed in based on his behavior and the violations which gave rise to his vacated conviction.