**Affirmed and Opinion filed May 31, 2018.**



**In The**

# Fourteenth Court of Appeals

**NO. 14-17-00240-CR**
**NO. 14-17-00241-CR**
**NO. 14-17-00242-CR**

**KALEB JAKOBI THOMAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause Nos. 15-CR-0454, 15-CR-0455, 15-CR-0456**

## O P I N I O N

The issue in this appeal is appellant's claim that the trial court erred by basing its sentence partly on the court's determination that appellant testified untruthfully during the punishment hearing. According to appellant, courts must assess punishment under Texas Code of Criminal Procedure article 37.07, section 3(a) while disregarding a defendant's false testimony during a punishment hearing, because lying under oath is not "bad acts" evidence probative of suitable

punishment. We hold that a trial court may consider a defendant's untruthfulness when assessing punishment and accordingly affirm the judgment.

## Background

A Galveston County grand jury indicted appellant Kaleb Jakobi Thomas on three charges of aggravated robbery. The State alleged that appellant committed the charged offenses against three complainants, Chance Maynard, Amie Maynard, and Lerry Hollis. Appellant pleaded guilty to the charges. There was no agreement between the State and appellant as to punishment, and the trial court held a punishment hearing, with appellant's consent.

All three complainants testified for the State. The testimony presented by the State revealed the following. Chance lived with his mother, Amie, and Amie's boyfriend, Lerry, at a home in Galveston County. Chance worked with Antonio Elizondo. One weekend in February 2015, Elizondo bailed Chance out of jail. Elizondo drove his car to the jail to pick up Chance following Chance's release. Also in Elizondo's car were appellant and another man, James Washington. Elizondo drove appellant and Washington to Houston, then drove Chance to his home in Galveston. Elizondo left.

Later that night, Chance was awakened from sleep by appellant "pistol whipp[ing]" him. Appellant demanded money, and Chance gave him $200. Appellant told Chance to go to the living room, where Elizondo and Washington had forcibly deposited Amie and Lerry after awakening them. The assailants duct-taped the victims' hands and wrapped plastic bags around their heads. Appellant told Chance that the assailants were "going to take y'alls life." Washington repeatedly hit and choked Amie. Appellant directed Elizondo to "go get the gasoline." At some point, a fourth man came to the front door and admonished the assailants to be quiet.

2

Chance was able to free himself, and he fled the house. Chance heard gunshots but did not see who fired or who was shot. He returned to the house once police arrived. Chance and a police officer entered the house and found Amie had been shot. She survived but cannot walk due to a spinal injury from the gunshot. Lerry also escaped, but one of the assailants pursued and shot him. Lerry also survived but suffered severe internal injuries and brain damage. At trial, Lerry could not identify his assailant.

Appellant testified in his defense. His account varied markedly from the State's witnesses. Appellant said he, Elizondo, Washington, and a fourth man, Clifton Dixon, were at Washington's apartment the afternoon before the robberies. Appellant overheard Elizondo talking about selling a car, and appellant said that his uncle was looking to buy a car. Elizondo said the car was in Galveston, and he wanted to go get it and sell it to appellant's uncle that night. Appellant did not want to go, but all four men ultimately drove to Galveston.[1]

When the men reached Chance's house, appellant realized that the car Elizondo wanted to sell actually belonged to Chance. Elizondo, Dixon, and Washington went inside Chance's house—according to appellant, they were "just going in there and getting the car keys and leaving"—but appellant stayed in the car to work on a school project.[2] After about forty-five minutes passed, appellant knocked on the front door "to tell them to come on." Washington came out, carrying a gun. Appellant tried to leave, but Washington threatened him with harm if he left. Dixon gave appellant a gun, and then Dixon left the house. Now inside the house, appellant saw Elizondo assault Chance in order to obtain drugs. Elizondo then left

---

[1] Along the way from Houston to Galveston, the men stopped at Wal-Mart. Amie testified that the bags that the assailants wrapped around the victims' heads were Wal-Mart bags.

[2] Appellant later admitted on cross-examination that he had dropped out of school by the time these events occurred.

3

the house.  According to appellant, Elizondo was "supposed to be going [to] put some gas in the -- in the Chrysler."  This left only Washington and appellant inside the house with Chance, Amie, and Lerry.  Once Chance broke free from the duct tape and fled the house, Washington told appellant to pursue Chance but appellant instead fled and hid.

Appellant testified that he pleaded guilty because he was at the scene and he knew a car was going to be stolen.  Appellant asked the court to sentence him to probation.

On cross-examination, appellant admitted that he had lied to the police on several occasions, and that his account of events had changed numerous times. Appellant also admitted that police found Chance's car keys in appellant's apartment.

The trial court sentenced appellant to fifty-five years' confinement in each cause, to be served concurrently.[3]  In pronouncing appellant's punishment, the trial judge made the following comments, which form the basis of appellant's issue in this appeal:

> Okay.  There's some things that go for the defendant on this.  The admission of guilt goes for the defendant.  The fact that the defendant is young on this goes for the defendant.  The fact that the defendant has a small amount of criminal history, that goes well for the defendant.
>
> There's some things that go against the defendant.  This is really an extremely violent crime.  And any time there's talk about "go get the gasoline," any time there's talk about putting plastic bags over peoples' heads and taping them shut, this is a horribly violent crime.  And what

---

[3] Elizondo and Washington were also charged and convicted.  *See Elizondo v. State*, 541 S.W.3d 271 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (affirming Elizondo's sentence); *Washington v. State*, Nos. 14-16-00452-CR, 14-16-00453-CR, 2018 WL 504750 (Tex. App.— Houston [14th Dist.] Jan. 23, 2018, pet. ref'd) (mem. op., not designated for publication) (affirming Washington's convictions).  According to the lead investigator who testified, Dixon was charged as well.

makes it more violent are the results on this case where the victims were hurt badly. And easily, easily there could have been 2 deaths in this case, easily.

I don't think there's any way that the defendant is not completely involved in this case. And there's a huge amount of evidence of the violence of the defendant even going so far as the evading and hiding after the act. And that's from his own testimony. *But what's most problematic about this whole trial is the apparent untruthfulness of the defendant throughout the entire period where the stories have gone all over the place.*

So, Mr. Thomas, based on your plea of guilty and then the evidence that was presented in this case, on all three of these cases, I'm sentencing you to 55 years confinement in the institutional division of the Texas Department of Criminal Justice. (Emphasis added).

Appellant now appeals his sentences.

## Analysis

In a single issue, appellant argues that the trial court's consideration of appellant's untruthfulness was harmful error. Citing Code of Criminal Procedure article 37.07, section 3(a)(1), appellant contends the trial court could not permissibly take into account the court's credibility assessment that appellant lied on the stand during the punishment hearing. The State responds that appellant failed to preserve his argument for appeal, the trial court's action was not erroneous, and that appellant was not harmed by any error. Because we hold that the trial court did not commit error, we need not address the State's alternative arguments, including preservation of error.[4]

---

[4] We assume without deciding that appellant either preserved error in the trial court or was not required to do so.

## A.     Standard of review

Because appellant's argument involves interpretation and application of a statute, the appropriate standard of review is de novo. *See Mireles v. State*, 444 S.W.3d 679, 680 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ("When interpreting a statute, we apply a de novo standard of review, mindful that our primary objective is to ascertain and give effect to the intent of the legislature.").

## B.     The trial court did not err by considering appellant's credibility in assessing punishment.

Article 37.07 governs admission of evidence during the punishment phase of trial, and specifically allows the State and the defendant to offer evidence of "any matter the court deems relevant to sentencing . . . ." Tex. Code Crim. Proc. art. 37.07, § 3(a)(1). Appellant cites the following statutory text as the foundation of his argument:

> Sec. 3. Evidence of prior criminal record in all criminal cases after a finding of guilty.
>
> (a)(1) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act. . . .

*Id.*

Based on article 37.07, section 3(a), appellant contends that only certain categories of evidence count in the punishment determination. These categories are

the defendant's responsibility for prior offenses, "bad acts," and character or reputation evidence. Appellant argues that lying under oath during a punishment hearing is not the type of "bad act" contemplated by article 37.07 because it does not aid "determination of the punishment which is appropriate for the charged offenses." Therefore, according to appellant, the judge erred in considering appellant's untruthfulness in assessing punishment.[5]

Appellant reads article 37.07, section 3(a) too narrowly. As the quoted text makes clear, the State and the defendant may offer evidence "as to any matter the court deems relevant to sentencing." *Id.* In this regard, it has long been the rule that, in assessing punishment, "a trial judge is entitled to consider a defendant's truthfulness as he testifies." *Green v. State*, No. 05-92-02736-CR, 1995 WL 73323, at *2 (Tex. App.—Dallas Feb. 21, 1995, no pet.) (not designated for publication) (citing *United States v. Grayson*, 438 U.S. 41, 53 (1978), *superseded by statute on other grounds as stated in Barber v. Thomas*, 560 U.S. 474, 482 (2010); *Wilson v. State*, 810 S.W.2d 807, 810 (Tex. App.—Houston [1st Dist.] 1991, no pet.)); *see also Salter v. State*, No. 05-09-00915-CR, 2010 WL 1444904, at *2 (Tex. App.—Dallas Apr. 13, 2010, no pet.) (not designated for publication) (same). It is both necessary and proper for a trial judge to evaluate a defendant's credibility, as

---

[5] It is reasonable to conclude, as appellant does, that the trial court's reference to appellant's "untruthfulness" was based at least in part on appellant's live testimony during the punishment hearing. But the judge could have been referring also to appellant's allegedly untruthful statements to police officers during their investigation of the crime. The trial court's consideration of the defendant's untruthfulness prior to the punishment hearing is proper and appellant does not challenge it. *See, e.g.*, *Sims v. State*, 273 S.W.3d 291, 296 (Tex. Crim. App. 2008) (explaining that testimony that defendant lied to police officer was relevant at punishment to determine defendant's ability to complete demands of supervision); *Dwyer v. State*, No. 06-01-00077-CR, 2003 WL 252145, at *1, 3 (Tex. App.—Texarkana Feb. 6, 2003, no pet.) (mem. op., not designated for publication) (in reviewing sentence for abuse of discretion, court held that evidence supported sentence because, inter alia, defendant lied to police after arrest). However, we constrain our analysis to the specific issue appellant presents: whether the trial court erred in considering appellant's perceived untruthfulness while testifying during the punishment hearing.

manifested by his conduct at trial and testimony under oath. *See Grayson*, 438 U.S. at 53; *see also Wilson*, 810 S.W.2d at 811 (a trial judge's conclusions about a defendant's trial conduct are properly considered in deciding punishment).

> To this end, the United States Supreme Court in *Grayson*

> reaffirm[ed] the authority of a sentencing judge to evaluate carefully a defendant's testimony on the stand, determine—with a consciousness of the frailty of human judgment—whether that testimony contained willful and material falsehoods, and, if so, assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society.

*Grayson*, 438 U.S. at 55; *accord also Boyd v. State*, Nos. 14-99-01355-CR, 14-99-01356-CR, 14-99-01357-CR, 2001 WL 619587, at *6 (Tex. App.—Houston [14th Dist.] June 7, 2001, pet. ref'd) (not designated for publication) (after appellant refused to accept responsibility for aggravated robbery, court of appeals stated that "[a]cceptance of responsibility and truthfulness after the fact is a proper factor for a court to weigh in setting an appropriate sentence") (citing *Grayson*, 438 U.S. at 45-47); *Burgess v. State*, Nos. 14-88-00790-CR, 14-88-00791-CR, 1989 WL 131099, at *2 (Tex. App.—Houston [14th Dist.] Nov. 2, 1989, pet. ref'd) (not designated for publication) (trial judge "could properly consider Burgess' testimony and her lack of truthfulness" in assessing punishment). Consistent with this authority, we hold that a defendant's lack of veracity while testifying during a punishment hearing is a "matter . . . relevant to sentencing" under article 37.07, section 3(a) and properly may be considered.

More so, because appellant chose to offer testimony on a subject expressly contemplated by article 37.07, section 3(a)—"the circumstances of the offense for which he is being tried"—all considerations applicable to the trial court's assessment of live witness testimony are appropriate, including the defendant's violation of his

oath to testify truthfully. *See, e.g., Todd v. State*, 911 S.W.2d 807, 818 (Tex. App.— El Paso 1995, no pet.) ("In the punishment phase of a trial, as in all other aspects in which the trial court sits as the fact finder, it is the trial court that weighs the credibility of the witnesses."); *see also Saiyed v. State*, No. 03-17-00106-CR, 2017 WL 3379104, at *2 (Tex. App.—Austin July 31, 2017, pet. ref'd) (mem. op., not designated for publication) (trial court, in its role of factfinder during punishment hearing, may make determinations as to credibility of witnesses and the weight to be given to their testimony, and the appellate court will not substitute its judgment on these matters). "When an accused voluntarily takes the stand in his own behalf, he may be contradicted, impeached, bolstered, or attacked just as any other witness except where the law forbids certain matters to be used against him." *Burgess*, 1989 WL 131099, at *2 (citing *Valerio v. State*, 494 S.W.2d 892, 898 (Tex. Crim. App. 1973)).

Appellant's position that a trial court cannot consider a defendant's untruthfulness in assessing punishment would seem to compel a corresponding conclusion that a trial court cannot consider a defendant's truthfulness either. Yet, at least one potential purpose in taking the stand in one's defense at the punishment stage is to convince the court that one is truthful. A trial court has discretion to assess a sentence more favorable to the defendant when the court finds the defendant has testified truthfully at punishment. *Accord Williams v. State*, No. 01-01-00061-CR, 2003 WL 139533, at *2 (Tex. App.—Houston [1st Dist.] Jan. 9, 2003, no pet.) (mem. op., not designated for publication) (record suggested that appellant benefited from testifying at sentencing hearing; trial court "expressed appreciation to [defendant] 'for being apparently honest' in answering questions"); *cf. Bailey v. State*, Nos. 14-01-00486-CR, 14-01-00487-CR, 2002 WL 122295, at *3 (Tex. App.—Houston [14th Dist.] Jan. 31, 2002, no pet.) (not designated for publication)

(noting in dicta that, in assessing punishment, trial court "may very well have considered" appellant's "forthright, apologetic, remorseful, honest, and cooperative" conduct during proceedings). For the defendant who has pleaded guilty to an offense, truthful testimony at punishment tends to demonstrate true remorse and greater "prospects for rehabilitation and restoration to a useful place in society." *Grayson*, 438 U.S. at 55. If a defendant exercises his right to offer evidence under article 37.07, section 3(a) and professes honesty in the hope the court will find him so and, as a result, exhibit leniency in assessing punishment, then he must be prepared to accept the consequences if the court finds him to lack veracity and, as a result, does not exhibit leniency in assessing punishment.

Finally, Court of Criminal Appeals precedent belies appellant's argument, at least regarding appellant's testimony at the punishment hearing. The court has indicated that lying while testifying is, in fact, an "extraneous bad act." *McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007). In *McGee*, the trial court, during the punishment stage, admitted evidence offered by the State for the purpose of showing that the defendant had lied on the witness stand during the guilt/innocence phase. *Id.* The Court of Criminal appeals held that the trial court did not err because "a defendant's truthfulness or mendacity while testifying on his own behalf, almost without exception, has been deemed probative of his attitudes toward society and prospects for rehabilitation and hence relevant to sentencing." *Id.* (internal quotation omitted). Accordingly, the trial court could permissibly consider appellant's untruthfulness as an extraneous "bad act" contemplated by article 37.07, section 3(a) and assess punishment accordingly.

For the foregoing reasons, we hold that the trial judge did not err in considering for sentencing purposes whether a defendant who chooses to offer evidence at a punishment hearing testifies untruthfully.

We overrule appellant's sole issue presented for review.

**Conclusion**

Having overruled appellant's sole issue, we affirm the trial court's judgments in all three causes.


/s/     Kevin Jewell
         Justice


Panel consists of Justices Busby, Brown, and Jewell.
Publish — Tex. R. App. P. 47.2(b).