Kem Thompson Frost, Chief Justice
Convicted of three counts of aggravated robbery and sentenced to forty years' incarceration, appellant Antonio Thomas Elizondo challenges his sentence and seeks a new punishment hearing. He asserts that the trial judge considered evidence outside of the record and that by doing so, the trial judge did not act as a neutral officer. We address (1) the preservation-of-error requirement, an issue the Court of Criminal Appeals has yet to address in this context and (2) whether the record supports appellant's contention that the trial judge considered evidence outside the record. We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Appellant pled "guilty" to three counts of aggravated robbery and testified against two men charged with participating in the same offenses.
The events that led to the charges began with a casual friendship between appellant and one of the complainants, whom appellant met while the two worked together at a pizza place. Appellant gave the coworker rides because the coworker did not have a car. Because appellant was living out of appellant's car, the coworker, who lived with his mother and her boyfriend, offered to let appellant stay in their home. The coworker's mother also befriended appellant, offering him food and washing his clothing.
Appellant learned from the coworker that the coworker was expecting a large tax refund and that the coworker intended to use the proceeds to buy a used car. The coworker mentioned the refund while in the presence of appellant and two of appellant's associates whom the coworker did not know. Appellant and the two associates hatched a plan to rob the coworker. They *273 planned to steal the coworker's newly-purchased car and any of the coworker's remaining tax-refund money.
The coworker collected his tax refund and a paycheck, receiving some of the funds in cash and loading the rest onto a debit card. Appellant drove the coworker to purchase the car. While the coworker was driving back, the newly purchased car broke down. Stranded on the highway, the coworker fell asleep in the car. A state trooper found the coworker asleep in the car, on the side of the highway, and realized there was an outstanding warrant for the coworker's arrest because the coworker had unpaid parking tickets. The trooper arrested the coworker and took him to jail.
Appellant and his two associates bonded the coworker out of jail. In the process, the two associates took possession of the property the coworker had turned over to police, including the coworker's debit card, onto which the coworker had loaded the proceeds from his paycheck and tax refund. At some point, the coworker got the broken-down vehicle to his mother's home. It was sitting in the driveway the next day when appellant dropped the coworker off after taking him on an excursion to Houston. Later the same day, appellant got together with the two associates and the three of them went to a store, where they bought duct tape, latex gloves, and plastic bags. The three also acquired two guns.
Appellant drove the two associates to the coworker's home, where they carried out the robbery. The three entered the home, waking up the coworker, the coworker's mother, and the coworker's mother's boyfriend. Appellant and the two associates dragged the coworker, the mother, and the boyfriend into the living room, where they bound them with duct tape and duct-taped plastic bags over their heads.
The coworker immediately gave up the keys to the car and all of the money he had, but appellant and the two associates said that the coworker, the mother, and the boyfriend knew too much and so appellant and the two associates would have to kill them. The coworker and his mother kept trying to get out of the duct tape. They were screaming. While the mother was fighting to escape, one of appellant's associates sexually assaulted her.
Appellant left the scene to buy gasoline. According to appellant, he went to get the gasoline to kill the coworker, the mother, and the boyfriend. The coworker and the mother both testified that appellant "was calling the shots" while these events unfolded.
While appellant was gone, the coworker managed to escape by breaking the duct tape and jumping from a window over a fence into a neighbor's yard. Appellant's associates shot the boyfriend and the mother. Then the associates began looking for the coworker, who was hiding outside. About that time, the associates heard sirens and fled. The associates called appellant, who was on his way back with gasoline, and told him what had happened and where they were hiding so that appellant could come get them.
Injured from the gunshots, the mother was transported by ambulance to a hospital, where she remained in a medically-induced coma for weeks. The coworker immediately told police appellant's identity and the police arrested appellant.
"Guilty" Plea
After appellant pled "guilty" and testified against the two associates, appellant elected to have the trial court assess punishment.
Punishment Hearing
At the punishment hearing, the mother testified that the gunshot wound she suffered *274 left her paralyzed, unable to move anything below her chest. The injuries left the mother incontinent and almost completely dependent on others. The mother testified that her life span is greatly reduced and eventually she will die from her injuries. The coworker also testified. Both the coworker and the mother suffer from post-traumatic-stress disorder. The boyfriend did not testify at trial, but the record revealed he suffered a non-fatal gunshot wound.
Appellant's father testified that he had been helping appellant pay for college in the year before the offenses. Appellant testified that he withdrew from school after his grades suffered because he was using drugs and partying too much. Appellant asked his father if appellant could live with him, but the father refused the request because the father was in the process of divorcing appellant's stepmother. The father testified that appellant's mother had not been involved in appellant's life and the father thought appellant could be rehabilitated. Appellant expressed remorse.
The trial judge sentenced appellant to forty years' confinement in each case, with the sentences to run concurrently. Before sentencing appellant, the trial judge stated on the record the reasons for his decision. Appellant now challenges the sentence.
ISSUES AND ANALYSIS
Appellant asserts that the trial court violated his right to due process of law by considering evidence outside of the record in imposing appellant's sentence. Construing the briefing liberally, appellant also argues that the trial court's consideration of evidence outside the record shows that the judge was not neutral and detached.
Before sentencing appellant, the trial judge stated:
The testimony is such that it appears that the defendant, while not directly responsible for the gunshots, he had a high position of authority and responsibility in that outcome. It has every appearance that the defendant initiated the plan or at least was high up in the pecking order of the plan, picked the victim, gathered the coconspirators, was involved in all matters of that case. The defendant fully participated in the preparation of the robbery until right at the end. And, of course, what sends chills down my spine is the order to bring gasoline to this, either to the victims-straight for the victims or for the house, don't know which.
Appellant contends that the trial court's conclusion that appellant "initiated the plan, or was high up in the pecking order," picked the victims, and gathered the coconspirators was not based on evidence admitted at trial. Appellant did not object to the trial court's consideration of this evidence at the punishment hearing when the trial judge made the statement. Nor did appellant object when the trial court pronounced the sentences. Appellant did not file a motion for new trial raising this complaint or otherwise voice an objection on this basis in the trial court.
Preservation-of-Error Requirement
Appellant asserts that he was not required to preserve error because the complaint implicates his right to a fair trial. See Marin v. State , 851 S.W.2d 275, 278 (Tex. Crim. App. 1993), overruled on other grounds Cain v. State , 947 S.W.2d 262 (Tex. Crim. App. 1997). According to appellant, he could not forfeit this right to a fair trial and therefore he was not required to object. See ids="11970918" index="2" url="https://cite.case.law/sw2d/947/262/">id. In Marin , the Court of Criminal Appeals explains that some rights are so fundamental to the proper functioning of our adjudicatory process that they enjoy special protection. See id="p275" href="#p275" data-label="275" data-citation-index="1" class="page-label">*275ids="11970918" index="3" url="https://cite.case.law/sw2d/947/262/">id. Only a few rights warrant an exception from the normal preservation-of-error rule. Henson v. State , 407 S.W.3d 764, 768 (Tex. Crim. App. 2013). Waivable-only rights include the right to assistance of counsel, the right to trial by jury, and the statutorily-mandated right that that appointed counsel have ten days before trial to prepare. Id. Absolute, systemic requirements that cannot be waived include personal jurisdiction, subject-matter jurisdiction, and a penal statute's compliance with the separation-of-powers section of the Texas Constitution. Id. Defendants must preserve error on alleged violations of most constitutional rights, even those assured by due process. See Ieppert v. State , 908 S.W.2d 217, 219 (Tex. Crim. App. 1995). Evidentiary objections, also, must be preserved. See Martinez v. State , 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). The Court of Criminal Appeals has not decided whether a party must preserve error on an argument that the trial judge was not neutral. See Brumit v. State , 206 S.W.3d 639, 644 (Tex. Crim. App. 2006) ; Barfield v. State , 464 S.W.3d 67, 81 (Tex. App.-Houston [14th Dist.] 2015, pet. ref'd).
Appellant does not cite any authority that the trial court's considering improper evidence violates a right so fundamental to the proper functioning of our adjudicatory process that it does not need to be preserved, and we have found none. To the extent appellant asserts an evidentiary objection, we conclude that appellant needed to preserve error on his evidentiary complaint. See Harvey v. State , 173 S.W.3d 841, 850 (Tex. App.-Texarkana 2005, no pet.) (holding defendant must preserve error on complaint that trial court considered evidence outside the record during punishment phase); Hayes v. State , 709 S.W.2d 780, 782 (Tex. App.-Houston [1st Dist.] 1986, no pet.) (same). We presume for the sake of argument that appellant was not required to preserve error on any complaint that the trial judge's consideration of evidence shows the judge was not neutral and detached in assessing punishment.
The Trial Judge's Neutrality
Due process requires trial judges to be neutral and detached in assessing punishment. Brumit , 206 S.W.3d at 645 ; State v. Hart , 342 S.W.3d 659, 672 (Tex. App.-Houston [14th Dist.] 2011, pet. ref'd). According to appellant, the record shows the trial judge was not neutral because the trial judge considered evidence outside of the record. Appellant does not explain why considering evidence outside of the record would suggest the trial judge was not a neutral and detached officer. Nonetheless, we need not decide whether considering evidence outside of the record shows that a trial judge lacks neutrality if the record does not show the trial judge considered evidence outside of the record.
Appellant contends that the only evidence establishing the formation of a plan was appellant's testimony that his associate came up with the idea to rob the coworker. Appellant stated that after the coworker mentioned the coworker was going to get some money, one of appellant's associates asked appellant how well he knew the coworker. Appellant testified that he surmised from the question that the associate was thinking of robbing the coworker. Appellant said "the conversation escalated" from there and the plan came about "collectively." Appellant also testified that:
• Appellant introduced the two associates to the coworker.
• Appellant was the one who knew where the coworker lived.
• Appellant was the one who knew the layout of the coworker's house.
*276 • Appellant knew that the family did not lock its doors and the three (appellant and the two associates) would be able to enter the home and surprise the coworker, mother, and boyfriend.
• Appellant drove everyone the night of the robbery.
• Appellant acknowledged that the robbery would not have occurred without his knowledge.
• Appellant decided to leave the home to get gasoline to light a fire and left to go get the gasoline.
• When asked if he thought the coworker was a "pushover," appellant testified that if he had thought that, he would have committed the robbery by himself.
The coworker and the mother testified that:
• During the robbery, appellant was "calling the shots" and the others followed appellant's instructions.
• The mother saw appellant grab the boyfriend.
• Appellant kicked and duct-taped the coworker.
• Appellant stated that the family would have to die. The coworker testified that appellant then left the home to get gasoline to "[expletive], us off." The coworker and the mother understood the statements appellant made as he was leaving to mean he was going to get gasoline to kill them.
The record evidence shows that appellant played a central role in committing the offenses and appellant's knowledge of the scene and intended victims was necessary to execute the plan. Appellant implied that he would have committed the robbery without the others if he had not thought he needed their help.
Appellant took responsibility for transporting the three-member team to get the tools (duct tape, plastic bags, and guns) for the robbery and to drive them to and from the crime scene. And, appellant gave commands during the robbery.
Appellant points to one of the associates and argues that he, not appellant, first suggested they rob the coworker. Based on the record evidence, the trial judge reasonably could have inferred that appellant "was high up in the pecking order of the plan, picked the victim[s], gathered the coconspirators, was involved in all matters of that case." See Dickhaut v. State , 493 S.W.2d 223, 226 (Tex. Crim. App. 1973) (holding that jury reasonably could have deduced appellant was selling marijuana based on record evidence). The trial judge's statement is grounded on the evidence and reasonable inferences from the evidence.
The record does not show that the trial court considered evidence outside of the record. Thus, the record does not support appellant's contention that the trial judge was not neutral.
CONCLUSION
Appellant did not preserve error on his complaint that the trial court considered evidence outside the record during the punishment hearing. Even if error-preservation was not required, the issue affords no basis for appellate relief because the trial court did not consider evidence outside of the record. The record does not show that the trial judge lacked neutrality and does not support appellant's contention that the trial judge was not neutral and detached in assessing punishment due to consideration of evidence outside of the record. Accordingly, we overrule appellant's *277 issue and affirm the trial court's judgment.