# NO. 12-22-00077-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *VALESKA BARNES,* *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Valeska Barnes appeals her conviction for assault. In two issues, Appellant contends that Texas Penal Code Section 12.50 is unconstitutional, and deficiencies in the reporter's record necessitate a remand for retrial on the merits. We affirm.

## BACKGROUND

The State, by information, charged Appellant with assault.[1] The information also alleged that the offense was committed in an area subject to a state of disaster declaration made by the Governor.[2] This allegation elevated the minimum punishment to a range of 180 days and one year of confinement in jail, along with up to a $4,000 fine.[3] This allegation did not affect Appellant's eligibility for community supervision.

Appellant pleaded "not guilty" to the offense and the matter proceeded to a jury trial. The State and Appellant stipulated that the offense occurred in an area subject to a state of disaster declaration. The evidence revealed that Appellant and the victim unknowingly shared the same lover, and that early one morning Appellant discovered the victim in her lover's bed,

---

[1] *See* TEX. PENAL CODE ANN. § 22.01 (West Supp. 2022).

[2] *See* TEX. GOV'T CODE ANN. § 418.014 (West 2019).

[3] *See* TEX. PENAL CODE ANN. § 12.50 (West Supp. 2022).

resulting in an assault in which Appellant struck the victim, and a melee ensued. Their lover returned to the apartment and separated the two. The victim reported the incident to the authorities several hours later, who subsequently arrested Appellant.

After hearing the evidence, the jury found Appellant "guilty" of the offense and sentenced her to 360 days of confinement in the county jail and assessed a $4,000 fine. However, the jury also recommended that the portion of Appellant's sentence requiring her confinement be suspended and that she be placed on community supervision. The trial court announced Appellant's sentence in accordance with the jury's verdict. This appeal followed.

### CONSTITUTIONALITY OF TEXAS PENAL CODE SECTION 12.50

In her first issue, Appellant contends that the Texas Legislature's promulgation of Texas Penal Code Section 12.50 violates the separation of powers doctrine enshrined in the Texas Constitution.

### Standard of Review

We review de novo a challenge to the constitutionality of a statute. *Salinas v. State*, 464 S.W.3d 363, 366 (Tex. Crim. App. 2015). We afford great deference to the Legislature and presume that the statute is constitutional and that the Legislature has not acted unreasonably or arbitrarily. *Ex parte Lo*, 424 S.W.3d 10, 14-15 (Tex. Crim. App. 2014). The party challenging the statute normally bears the burden of establishing its unconstitutionality. *Id.* at 15.

When we interpret statutes, our duty is to determine and give effect to the apparent intent of the legislators who voted on it. *Whitehead v. State*, 273 S.W.3d 285, 288 (Tex. Crim. App. 2008). In determining the legislative intent, we focus our attention on the text of the statute and how ordinary legislators would have understood the text. *Id.* We are not empowered to substitute what we believe is right or fair for what the Legislature has written, even if the statute seems unwise or unfair. *Vandyke v. State*, 538 S.W.3d 561, 569 (Tex. Crim. App. 2017). "Judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Id.*

### Applicable Law

The separation of powers among branches of government is fundamental in our country's history. *Id.* at 571. The Texas Constitution provides in pertinent part as follows:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confined to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another; and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1.

Although the language of the separation of powers provision is rigid, there is natural overlap in the duties delegated to each branch. *Vandyke*, 538 S.W.3d at 571. Not every instance of overlap, therefore, will amount to a violation of separation of powers. *See Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239-40 (Tex. Crim. App. 1990).

The Separation of Powers Clause may be violated in either of two ways. *Vandyke*, 538 S.W.3d at 571. First, it is violated when one branch of government assumes, or is delegated, to whatever degree, a power that is more "properly attached" to another branch. *Armadillo Bail Bonds*, 802 S.W.2d at 239. When a branch of government violates separation of powers in this way, it is said to have usurped another branch's power. *See Ex parte Giles*, 502 S.W.2d 774, 786 (Tex. Crim. App. 1974). The provision is also violated when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers. *Armadillo Bail Bonds*, 802 S.W.2d at 239 (citing *Rose v. State*, 752 S.W.2d 529, 535 (Tex. Crim. App. 1987)). This undue influence test "'takes the middle ground between those who would seek rigid compartmentalization and those who would find no separation of powers violation until one branch completely disrupted another branch's ability to function.'" *State v. Williams*, 938 S.W.2d 456, 460 (Tex. Crim. App. 1997) (quoting *Armadillo Bail Bonds*, 802 S.W.2d at 239).

Our Constitution vests all lawmaking power in the Legislature of the State of Texas. TEX. CONST. art. III, § 1. Provisions of our Constitution serve only as a limitation on power of the Legislature and not as a grant of power. *Vandyke*, 538 S.W.3d at 573. This includes the power to make, alter, and repeal laws, in accordance with the other provisions of the Constitution. *Id.* Of importance here, the Legislature possesses the sole authority to establish criminal offenses and prescribe punishments. *Id.* (citing *State ex rel. Smith v. Blackwell*, 500 S.W.2d 97, 104 (Tex. Crim. App. 1973) ("The Legislature is invested with the lawmaking power of the people and may define crimes and prescribe penalties.")); *see also Armadillo Bail Bonds*,

802 S.W.2d at 239 (citing ***Rose v. State***, 752 S.W.2d 529, 535 (Tex. Crim. App. 1987)); ***Jones v. State***, 902 S.W.2d 102, 105–06 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd).

Defendants must generally preserve error on alleged violations of most constitutional rights. ***Perales v. State***, 622 S.W.3d 575, 585–86 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd). This includes an argument that a particular statute violates the separation of powers provision of our Constitution. ***Wilkerson v. State***, 347 S.W.3d 720, 724 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (stating that separation of powers challenges must be preserved). However, there is an exception: a penal statute's compliance with the separation of powers section of the Texas Constitution is an absolute, systemic requirement that cannot be waived. ***Henson v. State***, 407 S.W.3d 764, 768 (Tex. Crim. App. 2013); ***Elizondo v. State***, 541 S.W.3d 271, 275 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

## Discussion

It is difficult to ascertain the exact contours of Appellant's constitutional claim in her first issue. On the one hand, she appears to challenge the Legislature's delegation of authority to the Governor in Texas Government Chapter 418 pertaining to his declaration of a state of disaster. On the other hand, she also appears to contend that Texas Penal Code Section 12.50 violates the separation of powers doctrine in Article I, Section 2 of the Texas Constitution.

To the extent that Appellant challenges the Legislature's delegation of authority to the Governor in Chapter 418 of the Texas Government Code, we hold that she failed to preserve this issue. *See* TEX. R. APP. P. 33.1; *see also* ***Ex parte Williams***, No. 03-20-00457-CR, 2021 WL 1583882, at \*11–12 (Tex. App.—Austin Apr. 23, 2021, no pet.) (mem. op., not designated for publication) (holding defendant failed to preserve error challenging separation of powers argument concerning Governor's COVID-19 pandemic order made under Texas Government Code Chapter 418, which among other things, suspended rules related to personal bonds for individuals who have been convicted or have been arrested for crimes involving physical violence). At no point did Appellant object to the application of Chapter 418. *See* ***Wilkerson***, 347 S.W.3d at 724. In fact, the parties stipulated that the assault took place in an area subject to a disaster zone proclamation issued by the Governor.

In any event, Chapter 418 does not present a violation of the separation of powers provision. The Disaster Act in Chapter 418 establishes a detailed, comprehensive framework that, in the case of a disaster, allocates powers, duties, and responsibilities across various levels

4

of state government and multiple agencies. *See Ector Cnty. All. of Businesses v. Abbott*, No. 11-20-00206-CV, 2021 WL 4097106, at *2 (Tex. App.—Eastland Sept. 9, 2021, no pet.) (mem. op.). A "disaster" is "the occurrence or imminent threat of widespread or severe damage, injury, or loss of life or property resulting from any natural or man-made cause," including the COVID-19 pandemic. *See* TEX. GOV'T CODE ANN. § 418.004(1) (West Supp. 2022); *see also See Ector Cnty. All. of Businesses*, No. 11-20-00206-CV, 2021 WL 4097106, at *2. The Governor of Texas is responsible for meeting "the dangers to the state and people presented by disasters." TEX. GOV'T CODE ANN. § 418.011(1) (West 2019).

The purposes of the Disaster Act include, among other things, to: (1) reduce vulnerability of people and communities of this state to damage, injury, and loss of life and property resulting from natural or man-made catastrophes and riots; (2) clarify and strengthen the roles of the governor, state agencies, the judicial branch of state government, and local governments in prevention of, preparation for, response to, and recovery from disasters; (3) authorize and provide for cooperation in disaster mitigation, preparedness, response, and recovery; and (4) authorize and provide for coordination of activities relating to disaster mitigation, preparedness, response, and recovery by agencies and officers of this state, and similar state, local, interstate, federal-state, and foreign activities in which the state and its political subdivisions may participate. *See id.* § 418.002(1), (4)-(6) (West Supp. 2022).

The Act provides that the "[G]overnor by executive order or proclamation may declare a state of disaster if the [G]overnor finds a disaster has occurred or that the occurrence or threat of disaster is imminent." *Id*. § 418.014(a) (West 2019). The "state of disaster" continues until the Governor finds that the threat or danger has passed; or the disaster has been dealt with to the extent that emergency conditions no longer exist; and terminates the state of disaster by executive order. *Id.* § 418.014(b). Importantly, the statute continues:

> A state of disaster may not continue for more than 30 days unless renewed by the [G]overnor. The [L]egislature by law may terminate a state of disaster at any time. On termination by the [L]egislature, the [G]overnor shall issue an executive order ending the state of disaster.

*Id.* § 418.014(c). This provision avoids any separation of powers issue because it balances the Legislature's delegation of authority to the Governor to act expeditiously in times of emergency, while also preserving its own authority to terminate the state of disaster. In other words, the

statute retains the power of the Legislature to act in its legislative function and does not represent an improper delegation of authority to the Governor.

As for Texas Penal Code Section 12.50, the Texas Court of Criminal Appeals has held that an Appellant cannot waive a violation of the separation of powers doctrine's application to a penal statute. *See, e.g., Henson*, 407 S.W.3d at 768. Appellant's brief appears to primarily challenge the Governor's authority to declare a disaster zone in periods when the Legislature does not meet. However, liberally construing her brief, it appears Appellant also challenges Section 12.50. We hold that Appellant's separation of powers challenge to this statute is unavailing.

Texas Penal Code Section 12.50 provides elevated penalties for various categories of enumerated offenses committed during a declaration of a state of disaster made by the Governor under Texas Government Code Chapter 418. *See* TEX. PENAL CODE ANN. § 12.50 (West Supp. 2022). Assault is one of these offenses, elevating the minimum term of confinement to 180 days. *See id* § 12.50(b)(1), (c).

As we have stated, the Texas Constitution vests all lawmaking power in the Legislature of the State of Texas. TEX. CONST. art. III, § 1. Furthermore, the Legislature possesses the sole authority to establish criminal offenses and prescribe punishments. *Vandyke*, 538 S.W.3d at 573 (citing *Blackwell*, 500 S.W.2d at 104); *see also Armadillo Bail Bonds*, 802 S.W.2d at 239; *Jones*, 902 S.W.2d at 105–06.

Texas Penal Code Section 12.50 does not represent a delegation of its lawmaking authority; rather it provides elevated punishments for offenses that occur during a state of disaster, which is fully within its legislative function to establish criminal offenses and prescribe punishment. *See Vandyke*, 538 S.W.3d at 573. It is within the constitutional power vested in the Legislature to determine that the penalty for certain crimes like assault occurring in times of a state of disaster should be enhanced, the apparent purpose of which is to provide additional deterrence and keep the peace during such periods. *See* TEX. GOV'T CODE ANN. § 418.002, .014; TEX. PEN. CODE ANN. § 12.50; *Vandyke*, 538 S.W.3d at 573.

Accordingly, we hold that Appellant has failed to show that one branch of government improperly usurped another branch's power, or that one branch unduly interfered with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers. *See Armadillo Bail Bonds*, 802 S.W.2d at 239.

Appellant's first issue is overruled.

<h2 style="text-align:center">REPORTER'S RECORD DEFICIENCIES</h2>

In Appellant's second issue, she argues that the reporter's record is of such deficient quality and character that it may not be relied upon by this Court, necessitating a remand for retrial on the merits.

## Standard of Review

"Whether a court reporter violates her statutory duties is a question of law that we review de novo." *Walsh v. State*, No. 05-19-00710-CR, 2021 WL 3438069, at *1–3 (Tex. App.—Dallas Aug. 5, 2021, no pet.) (mem. op., not designated for publication) (citing *Herron v. State*, 625 S.W.3d 144, 152–53 (Tex. Crim. App. 2021) (questions of statutory construction reviewed de novo); *Ex parte De La Cruz*, 466 S.W.3d 855, 866 (Tex. Crim. App. 2015) ("We review de novo both pure questions of law and mixed questions of law and fact that do not depend upon credibility and demeanor.")).

"When we interpret statutes, we look to the literal text of the statute in question and attempt to discern the fair, objective meaning of the text at the time of its enactment." *Day v. State*, 614 S.W.3d 121, 127 (Tex. Crim. App. 2020). Our analysis ends if the plain language is clear and unambiguous because "the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute." *Id.*

## Applicable Law

Texas Rule of Appellate Procedure 13.1 provides that the official court reporter must, "unless excused by agreement of the parties, attend court sessions and make a full record of the proceedings." TEX. R. APP. P. 13.1(a). Texas Government Code Section 52.046 provides that, "*on request*, an official court reporter shall:

(1) attend all sessions of the court;
(2) take full shorthand notes of oral testimony offered before the court, including objections made to the admissibility of evidence, court rulings and remarks on the objections, and exceptions to the rulings;
(3) take full shorthand notes of closing arguments if requested to do so by the attorney of a party to the case, including objections to the arguments, court rulings and remarks on the objections, and exceptions to the rulings;
(4) preserve the notes for future reference for three years from the date on which they were taken; and
(5) furnish a transcript of the reported evidence or other proceedings, in whole or in part, as provided by this chapter.

TEX. GOV'T CODE ANN. § 52.046(a) (West 2023) (emphasis added).

The Texas Court of Criminal Appeals has held that a defendant must object to the court reporter's failure to record a portion of the trial proceedings to preserve error. *Valle v. State*, 109 S.W.3d 500, 508–09 (Tex. Crim. App. 2003); *see also Rodriguez v. State*, 491 S.W.3d 18, 33–34 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (holding that defendant's argument regarding reporter's failure to record bench conferences was waived on appeal where defendant did not object at trial); *Velazquez v. State*, 222 S.W.3d 551, 556–57 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (concluding that defendant's complaint that court reporter failed to record bench conferences was not preserved for appellate review because defendant did not object to lack of court reporter's presence at conferences). This rule likewise applies to any alleged failure to record voir dire proceedings in whole or in part. *See Washington v. State*, 127 S.W.3d 111, 114–15 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding defendant did not preserve complaint that court reporter failed to record voir dire proceedings); *see also Hunnicutt-McDonald v. State*, No. 01-18-01035-CR, 2019 WL 3484215, at *2–3 (Tex. App.—Houston [1st Dist.] Aug. 1, 2019, no pet.) (mem. op., not designated for publication) (holding defendant waived failure of court reporter to record bench conferences concerning challenges for cause of prospective jurors during voir dire).

**Discussion**

Appellant first contends that the voir dire transcript contains twenty-five instances in which the court reporter indicated "ANON" when referring to some of the venirepersons on the panel, thereby limiting her ability to challenge the panel on appeal.

At the outset, we note that many of the "ANON" references occurred because Appellant's counsel did not identify the venireperson to whom he asked the question. The remaining "ANON" references were in response to inconsequential matters. Furthermore, Appellant did not object to any juror selected in voir dire. She also never objected or otherwise made the trial court aware of her complaint, and therefore did not preserve error. *See Washington*, 127 S.W.3d at 114–15; *see also Hunnicutt-McDonald*, 2019 WL 3484215, at *2–3.

Moreover, even if she had preserved the issue, she fails to show error. In a similar case, the defendant alleged that the court reporter failed to fulfill her duties in not identifying the prospective jurors by name or number, and that this prevented him from challenging the dismissal of two of the jurors for cause. *See Walsh*, 2021 WL 3438069, at *1–2. The Dallas

8

Court of Appeals disagreed, noting that the reporter identified each member of the venire panel as "prospective juror" unless the judge or counsel identified them by name or juror number. *See id.* at *2. The court explained:

> Section 52.046 includes no requirement that the court reporter identify veniremembers by name or juror number when the trial judge and the parties' counsel do not identify the veniremembers by name or juror number. Under the plain language of the statute, the court reporter was required to "take full shorthand notes of oral testimony." The court reporter fulfilled that duty here. The record shows that the court reporter fully transcribed the proceedings by transcribing the words spoken by the trial judge, the veniremembers, and the parties' counsel. There is no indication in the record that any portion of what transpired is missing from the transcript.

*See id.* at *3 (internal citations omitted). That is what occurred in the instant case—the court reporter recorded the veniremember's name or number when referred to as such by counsel or the court. Any "ANON" references occurred when either the court or counsel failed to identify the person by name or number. Therefore, we conclude that the court reporter did not err in this regard. *See id.*

Next, Appellant challenges several portions of the trial transcript, alleging that it contains several inaccuracies. For example, Appellant contends that the following excerpts from the transcript outlined in her brief contain inaccuracies of such a magnitude that we cannot rely on them, necessitating a remand for a new trial:

> During the direct examination of the [victim,] the prosecutor . . . is reported as having asked the witness:
>
> Q. And was it usual for him to get pone calls at 5:17 in the morning? Was that normal?
>
> . . . .
>
> Q. Was there anything going on in [your lover's] life at that?
> A. Yes. His grandfather ill at that time.
> Q. What kind of disease did he have?
> A. Some type of cancer or something that he was very ill and very sick six.
>
> . . . .
>
> Q. You spent the night, at the request of [your lover] in his bed, and you were attack?
> A. Yes, ma'am.
>
> . . . .
>
> Q. Now, [victim], are you on Face Book?
> A. Yes, ma'am.
> Q. What is Face Box?
>
> . . . .

Q. You wold be talking about Detective Stouffer, then?
A. Correct.

. . . .

Q. And there are a lot of people that smoke marihuana.  I appreciate your honesty for admitting that.  Thank you for telling the true.

Under recross examination, defense counsel is reported as having asked the victim:

Q. Okay.  And you wanted that commitment, didn't?
A. Yes, I did.

On redirect examination, [the prosecutor] asked [the victim]:

Q. But you ended things after this happen, didn't you?
A. Correct.

. . . .

Q. And you didn't specifically ask?
A. No, because I was really looking at was it an assault and how the assault occurred.  Not what happened six hours or ten hours our however long prior to that.

During [the prosecutor's] direct examination of Officer Seth Stouffer, the transcript reports:

A.   Which looking at assaults, she had visible injuries then she's assault.

We first note that when such an error is raised for the first time in the appellate court, we *may* abate the appeal and refer the matter to the trial court to be resolved.  *See* TEX. R. APP. P. 34.6(e)(3) ("If the dispute arises after the reporter's record has been filed in the appellate court, that court *may* submit the dispute to the trial court for resolution."); *see also **Flores v. Grayson Cnty. Cent. Appraisal Dist.**,* No. 05-16-00180-CV, 2016 WL 7384161, at *3 (Tex. App.—Dallas Dec. 21, 2016, no pet.) (mem. op.) (discussing discretionary nature of appellate courts to submit disputed inaccuracies in court reporter's record to trial court for resolution).  In other words, if not warranted in a particular case, we are not required to abate the appeal.  *See* TEX. R. APP. P. 34.6(e)(3); *see also **Flores**,* 2016 WL 7384161, at *3.  Here, the complained of portions of the transcript relate to simple misspellings or omitted words that are immaterial when considered in their context within the record.

Furthermore, among other requirements, to be entitled to a new trial for deficiencies in the reporter's record, the error must relate to a significant exhibit or significant portion of the reporter's record, and such portion must be necessary to the appeal's resolution.  *See* TEX. R.

APP. P. 34.6(f)(2)-(3); *see also **Lazy W Conservation Dist. v. Jones***, No. 12-22-00168-CV, 2023 WL 327805, at *8 (Tex. App.—Tyler Jan. 19, 2023, no pet. h.) (mem. op.) (holding that missing portion of record be significant and necessary to appeal's resolution, and if not, error is harmless and new trial not required).  Appellant has not shown that the errors are significant, necessary to the appeal's resolution, or that she was harmed by any of the inaccuracies in the record.  *See Flores*, 2016 WL 7384161, at *3 (overruling appellant's complaints about alleged inaccuracies in court reporter's record and noting appellant "has failed to put forth any argument about how he has been harmed by these alleged inaccuracies or how they might affect our ability to conduct an appellate review").  Accordingly, for these reasons, we hold that Appellant is not entitled to a new trial for the alleged errors in the reporter's record.

Appellant's second issue is overruled.

## DISPOSITION

Having ***overruled*** Appellant's two issues, the trial court's judgment is ***affirmed***.

BRIAN HOYLE
Justice

Opinion delivered March 31, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 31, 2023**

**NO. 12-22-00077-CR**

**VALESKA BARNES,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the County Court at Law

of Nacogdoches County, Texas (Tr.Ct.No. CF2001769)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*