**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-23-00185-CR
NO. 09-23-00186-CR
_____

GARRETT WAYNE MURPHREY, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

**On Appeal from the 359th District Court
Montgomery County, Texas
Trial Cause Nos. 21-08-11688-CR and 22-10-14418-CR**

_____

**MEMORANDUM OPINION**

Garrett Wayne Murphrey appeals his convictions for injury to a child and assault family violence impeding breath or circulation. *See* Tex. Penal Code Ann. §§ 22.01(b)(2)(B), 22.04(f). In four issues, Murphrey complains about the admission of his recorded interview, denial of his motion for a mistrial, consideration of matters not in evidence, and comments the trial judge made to the jury during deliberations. For the reasons discussed below, we affirm the trial court's judgments.

1

# BACKGROUND

In August 2021, Murphrey's twelve-year-old son, T.M.,[1] arrived at school via the school bus when special education instructor Angelica Dawson noticed an injury to T.M.'s right eye. Dawson reported T.M.'s injury to an administrator and filed a report with Child Protective Services (CPS). T.M. was then escorted to the nurse, who observed bruises on T.M.'s neck that appeared to be choke marks and bruises on his right eye, back, and shoulder. T.M. initially stated he was injured when he fell out of bed, but later stated that Murphrey caused his injuries.

Upon receiving the report from law enforcement, CPS investigator, Makayla Vargas, testified that she went to the school to investigate T.M.'s injuries. Vargas took photos of T.M.'s injuries and determined that a forensic interview was necessary. Vargas called Murphrey and explained that CPS had received a report of allegations of abuse after T.M. arrived at school with injuries. Vargas requested permission to transport T.M. for the forensic interview, and Murphrey denied Vargas's request and explained that the injuries could have been the result of their wrestling.

---

[1] We use initials to refer to the victim to conceal his identity. *See* Tex. Const. art. I, § 30 (a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[.]").

Vargas interviewed T.M. at school. T.M. stated that Murphrey got upset with him when he messed up on his homework. T.M. explained that he was sitting in a chair when Murphrey hit him in the face and neck with an open hand, and that the chair fell, angering Murphrey and causing Murphrey to choke T.M. against the ground. T.M. stated that Murphrey hit him about five times, including hitting him in the middle of his back with his fist. T.M. could not explain the visible scratches on his body.

After interviewing T.M., Vargas interviewed Murphrey at his home. Vargas indicated that based on the abuse allegations and Murphrey's hostility over the phone, at her request Detective Prudencio Ochoa and two uniformed deputies accompanied Vargas to Murphrey's home. According to Vargas, she interviewed Murphrey first, and Detective Ochoa followed up with additional questions. Vargas acknowledged that when she left the school to go to Murphrey's home, Detective Ochoa indicated that Murphrey would get arrested.

After Vargas's interview of T.M., T.M. was transported to Children's Safe Harbor for a forensic interview. Once the forensic interview was completed, T.M. was transported to St. Luke's Hospital and then to Texas Children's Hospital for a strangulation exam and pediatric trauma services.

Detective Ochoa testified that he accompanied Vargas to interview Murphrey so that he could investigate a crime. Detective Ochoa testified that Murphrey

3

allowed him inside the home to answer questions, and Detective Ochoa recorded the interview. Detective Ochoa stated that when he asked Murphrey about T.M.'s bruises, Murphrey reported they were roughhousing. Detective Ochoa testified that he decided to arrest Murphrey for causing T.M.'s injuries because he did not believe Murphrey's story. He added that he and Vargas were not working in tandem, and he conducted his own investigation for his own purposes.

At the conclusion of Murphrey's interview, Murphrey was arrested and later charged with the offenses of injury to a child and assault family violence. A jury found Murphrey guilty of injury to a child and assault family violence impeding breath or circulation. The trial court sentenced Murphrey to five years imprisonment in both cases and ordered the sentences to run concurrently.

## ANALYSIS

In his first issue, Murphrey argues that the trial court erred by denying his motion to suppress and admitting his audio recorded interview with CPS and Detective Ochoa. Murphrey argues that CPS and law enforcement were working in tandem, and that during the interview, Vargas was acting as an agent of law enforcement. Murphrey further argues that he was in custody during the interview and *Miranda* warnings were required. According to Murphrey, because no *Miranda* warnings were given before Vargas's interview, the admission of the recorded interview was reversible error.

4

We review a trial court's ruling on a motion to suppress under an abuse of discretion standard. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *See Villarreal*, 935 S.W.2d at 138. Appellate courts afford almost total deference to a trial court's determination of the historical facts supported by the record, especially when the trial court's findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Monjaras v. State*, 664 S.W.3d 921, 926 (Tex. Crim. App. 2022). The appellate court also affords the same amount of deference to a trial court's ruling on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on the evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. The court reviews de novo those questions not turning on credibility and demeanor. *Id.* We will uphold the trial court's ruling if it is reasonably supported by the record. *Runyon v. State*, 674 S.W.3d 624, 632 (Tex. App.—Beaumont 2023, pet. ref'd). In determining whether a trial court's decision is supported by the record, we consider only the evidence adduced at the suppression hearing. *Arguellez v. State*, 409 S.W.3d 657, 662-63 (Tex. Crim. App. 2013).

Generally, the procedural safeguards to warn in compliance with *Miranda* apply to custodial interrogations by law enforcement or their agents. *Wilkerson v. State*, 173 S.W.3d 521, 526-27 (Tex. Crim. App. 2005); *see Miranda v. Arizona,* 384 U.S. 436 (1966). State employment alone does not, by itself, make a person a state agent for purposes of defining a custodial interrogation. *Wilkerson*, 173 S.W.3d at 528. The role of law enforcement is to "ferret out crime, investigate its commission, arrest the perpetrator, and gather evidence for a possible prosecution." *Coleman v. State,* No. AP-75,478, 2009 WL 4696064, at *7 (Tex. Crim. App. Dec. 9, 2009) (per curiam) (not designated for publication) (citing *Wilkerson*, 173 S.W.3d at 528). The duty of CPS workers is to protect the welfare and safety of children in the community. *Id.* The paths of police officers and CPS workers are separate, but parallel. *Id.*

When investigating allegations of abuse, police conduct a criminal investigation for an arrest, while CPS workers investigate to find a safe home and to protect the involved children. *Id.* "When a state-agency employee is working on a path parallel to, yet separate from, the police, *Miranda* warnings are not required." *Id.* That said, if the investigative paths of law enforcement and the state-agency converge, and they are working in tandem to investigate a criminal offense, a *Miranda* warning may be necessary. *Id.*

6

When determining if a person is in custody for *Miranda* purposes, a "reasonable person" standard is considered. *Dowthitt v. State,* 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California,* 511 U.S. 318, 322, 325 (1994)). In other words, "[a] person is in 'custody' only if, under the circumstances a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Id.*; *see Stansbury,* 511 U.S. at 325. An examination of all the objective circumstances surrounding the questioning is required in the inquiry of "custody." *Stansbury,* 511 U.S. at 322-23, 325; *Dowthitt,* 931 S.W.2d at 255.

The trial court conducted a suppression hearing outside the jury's presence prior to admitting the forty-four-minute audio recording of Murphrey's interview with CPS and law enforcement. Detective Ochoa testified about his investigation and explained that he understood the District Attorney's office would accept charges against Murphrey instantly and that Murphrey could go to jail depending on the outcome of the investigation.

Detective Ochoa denied bringing the two additional officers because Murphrey would be arrested. According to Ochoa he brought the additional officers because Murphrey was hostile when Vargas spoke with him over the phone. Detective Ochoa indicated that he did not decide to arrest Murphrey before the interview because he was interested in Murphrey's explanation of T.M.'s injuries.

7

Detective Ochoa also explained that he made the decision to arrest Murphrey because Murphrey could not provide a sufficient answer about how T.M. was injured.

At the conclusion of the hearing, the trial judge noted that the interview occurred in Murphrey's home, Murphrey voluntarily allowed Vargas and law enforcement inside, Murphrey did not ask to leave and was never told that he could not leave, and that once probable cause was manifested, Murphrey was read his *Miranda* warnings. The trial judge also noted that the interview lasted approximately thirty-five minutes before the uniformed officers entered Murphrey's home, and that Murphrey was free to call his mother. The trial judge ruled that CPS and law enforcement were working in tandem, but Murphrey was not in custody until probable cause manifested, and then *Miranda* warnings were read. The trial judge admitted the audio recording into evidence and denied Murphrey's running objection.

The audio recording shows that Murphrey invited Vargas and Detective Ochoa inside his home to discuss T.M.'s injuries. Detective Ochoa introduced himself and Vargas to Murphrey and explained that he and the two uniformed officers outside were there for Vargas's safety, which was standard protocol in similar CPS investigations. Murphrey explained his CPS history, most of which involved his substance abuse. Vargas provided Murphrey with information about

CPS's involvement, and she questioned Murphrey about T.M.'s home life, background information, and health history. Vargas then questioned Murphrey about T.M.'s injuries, and Murphrey denied that T.M. had a meltdown that would have required restraint and stated the injuries were from roughhousing. Vargas concluded her interview and explained that she would speak with her supervisor about the next steps.

The audio recording indicates that after Vargas completed her questioning, Detective Ochoa began his interview by reading Murphrey his *Miranda* rights. Murphrey then asked if he would be arrested, and Detective Ochoa responded that it was a possibility. After reading Murphrey his *Miranda* rights, Detective Ochoa questioned Murphrey about T.M.'s injuries and T.M.'s statement that Murphrey punched and choked him out of frustration. Approximately thirty-five minutes into the interview, the two uniformed officers came into the home, and Detective Ochoa arrested Murphrey.

Based on the audio recording and viewing the evidence in the light most favorable to the trial court's ruling, and deferring to the trial court's explicit and implicit historical findings of fact, we conclude the trial court did not abuse its discretion by finding that Murphrey was not in custody while being interviewed by Vargas, who was carrying out her CPS duties, and that *Miranda* warnings were not required during her interview. That said, the audio recording shows Murphrey was

in custody during his interview with Detective Ochoa and *Miranda* warnings were properly read. *See Stansbury,* 511 U.S. at 325; *Dowthitt,* 931 S.W.2d at 254. Based on the record, we also conclude the trial court did not abuse its discretion by denying Murphrey's motion to suppress. We overrule issue one.

In his second issue, Murphrey argues the prosecutor made incurable statements during closing argument criticizing his decision not to testify, causing severe harm. The State argues the trial court did not err by denying Murphrey's motion for mistrial because the prosecutor did not comment on Murphrey's failure to testify and was only discussing Murphrey's explanation of T.M.'s injuries that occurred during Detective Ochoa's interview.

"To constitute reversible error, the argument must be manifestly improper or inject new, harmful facts into the case." *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). If a trial court sustains an objection to improper jury argument, the complaining party must also request an instruction to disregard an offending argument if such an instruction could cure the prejudice. *See McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998). If the prejudice arising from an erroneous jury argument is incurable, the complaining party must move for a mistrial. *Id.* We review the trial court's denial of a motion for mistrial for an abuse of discretion, viewing the evidence in the light most favorable to the trial court's ruling, and considering only those arguments before the trial court at the time of the

10

ruling. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We must uphold the ruling if it was within the zone of reasonable disagreement. *Id.* In evaluating whether a trial court abused its discretion by denying a defendant's request for a mistrial based on improper jury argument, appellate courts must balance several factors, including "(1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011).

A mistrial is the appropriate remedy when the objected-to events are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004). A mistrial is required only in extreme circumstances when the prejudice is incurable because it "is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Because a mistrial is an extreme remedy, "a mistrial should be granted 'only when residual prejudice remains' after less drastic alternatives are explored." *Ocon*, 284 S.W.3d at 884-85 (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)).

11

It is improper for the prosecutor to comment on the failure of an accused to testify. *See Griffin v. California*, 380 U.S. 609, 613 (1965); *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). A comment regarding an accused's failure to testify "violates the privilege against self-incrimination and the freedom from being compelled to testify contained in the Fifth Amendment of the United States Constitution and Article 1, § 10, of the Texas Constitution." *Bustamante*, 48 S.W.3d at 764.

> To violate the right against self-incrimination, the offending language must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear. It is not sufficient that the language might be construed as an implied or indirect allusion. The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character.

*Id.* at 765 (internal citations omitted).

> The record shows that during closing argument, the prosecutor argued:
>
> . . . the defendant put himself in such a terrible box, we need something. We were roughhousing. Yeah, I see those injuries. Yep. Oh, I guess we probably got too rough. That is what he said. And don't you know if the truth was, I had to hold [T.M.] down because he had a meltdown and maybe I accidentally hurt him, he would have said that.

Murphrey objected that the prosecutor's improper comment violated his constitutional right not to testify, and he requested an instruction.

12

The trial court sustained Murphrey's objection, allowed the prosecutor to clarify, and instructed the jury not to consider "any reference to what Mr. Murphrey would have said, [] could have said, [and] should have said. . . . He has an absolute right not to testify, not to say anything. So, anything that you hear in closing about that should be stricken." Based on the instruction that Murphrey believed was insufficient, Murphrey requested a mistrial, which the trial court denied. The prosecutor then clarified to the jury that it should not consider that Murphrey did not testify or find it as any evidence of his guilt. The prosecutor explained to the jury that during Detective Ochoa's interview, Murphrey stated that he and T.M. were roughhousing and never stated that he had to restrain T.M. from hurting himself.

We presume the jury followed the trial court's instruction to disregard the complained-of argument. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). Here, the prejudicial effect of the prosecutor's argument did not likely cause the jury to ignore the trial court's instruction. *See Archie*, 340 S.W.3d at 739. Additionally, the trial court allowed the prosecutor to clarify her comment to the jury, and the prosecutor's clarification showed that she was not referring to Murphrey's failure to testify but to his responses during Detective Ochoa's interview. Having considered the entire record, we conclude the trial court's denial of Murphy's motion for mistrial did not constitute an abuse of discretion. *See Ocon*, 284 S.W.3d at 884. We overrule issue two.

In his third issue, Murphrey argues that during punishment, the trial court considered factors not in evidence and that he is entitled to a new punishment hearing. Specifically, Murphrey argues the trial court considered allegations of drug treatment and tax dollars or other money expended on Murphrey through rehabilitation programs or drug classes even though his Pre/Post Sentence Investigation Report did not include evidence of prior drug treatment. According to Murphrey, the only reference to tax dollars was by a witness who testified during punishment about being a taxpayer paying for his trial and how there was no benefit to putting him in jail. The State argues that Murphrey failed to preserve his complaint for our review. We agree.

The record shows that during the punishment phase before the trial court sentenced Murphrey, he failed to object when the trial court explained it did not consider probation because "the VA has given you ample opportunities to break all of your addictions, and we[] have spent multiple hundreds of thousands of dollars for you. Yet, you have not been able to fix it." To preserve a complaint for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. Tex. R. App. P. 33.1(a); *see Medina v. State*, No. 14-17-00638-CR, 2018 WL 4869504, at *2 (Tex. App.—Houston [14th Dist.] Oct. 9, 2018, no pet.) (mem. op., not designated for publication) (stating defendant was required to preserve error on his complaint that the trial court

considered evidence outside the record when imposing his sentence); *Elizondo v. State*, 541 S.W.3d 271, 274-75 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (same); *Waldrep v. State*, Nos. 09-12-00299-CR, 09-12-00300-CR, 2013 WL 589008, at *1 (Tex. App.—Beaumont Feb. 13, 2013, no pet.) (mem. op., not designated for publication) (same). Since Murphrey failed to object to the trial court's consideration of evidence outside the record, we conclude Murphrey failed to preserve his complaint for our review. *See Medina*, 2018 WL 4869504, at *2; *Elizondo*, 541 S.W.3d at 274-75. We overrule issue three.

In his fourth issue, Murphrey argues that the trial court made comments to the jury during deliberations that constitute a comment on the weight of the evidence which is prohibited by Article 38.05 of the Texas Code of Criminal Procedure. Murphrey argues that he was denied his right to a fair and impartial jury due to the trial court's comments which conveyed the opinion of the judge as to Murphrey's guilt.

Article 38.05 prohibits a trial judge, prior to return of the verdict, from making "any remark calculated to convey to the jury his opinion of the case[]" at any stage of the proceeding. Tex. Code Crim. Proc. Ann. art. 38.05. Trial court judges have been cautioned not to comment on the weight of the evidence and not to imply to the jury the court's opinion of any fact issues before the jury. *See id.; see also Jones v. State,* 788 S.W.2d 834, 835 (Tex. App.—Dallas 1990, no pet.). To constitute

15

reversible error, a comment by the court in violation of article 38.05 must be reasonably calculated to prejudice the defendant's rights or to benefit the State. *See Proenza v. State*, 541 S.W.3d 786, 791 (Tex. Crim. App. 2017); *Valladarez-Martinez v. State*, No. 09-23-00049-CR, 2024 WL 953230, at *2 (Tex. App.—Beaumont Mar. 6, 2024, no pet.) (mem. op., not designated for publication).

The record shows that during deliberations, the jury informed the trial court that they had reached a verdict on one case but were deadlocked on the other case. The trial court conferred with all counsel to discuss how the trial court should address the jury's concern about the deadlocked case, and defense counsel agreed to instructing the jury that "[s]ufficient time has not elapsed. Keep working." While instructing the jury to continue with deliberations, the trial court commented: "Based on the severity of the crime, based on the level of the offense, based on all those factors that I have to look at, I am now -- do not want to reveal and do not reveal who the foreperson is to me. I am going to give you a verbal order that I'm going to ask that you continue to work on the deadlock case at this time." Defense counsel did not object to the trial court's comment.

Although defense counsel failed to object to the trial court's comment while instructing the jury, his complaint can be made for the first time on appeal. *See Anderson v. State*, No. 09-19-00206-CR, 2020 WL 6749940, at *5 (Tex. App.—

16

Beaumont Nov. 18, 2020, no pet.) (mem. op.) (not designated for publication) (citing *Proenza*, 541 S.W.3d at 801).

We reject Murphrey's argument that the comment of the trial court deprived Murphrey of a fair trial or a substantial or fundamental right. In the context in which it was given, in order to instruct the jury to continue deliberations, there was nothing said that was prejudicial to the defense nor beneficial to the state. We conclude there is no reversible error because the comment was not reasonably calculated to benefit the State or prejudice the defendant's rights. *See Proenza*, 541 at 791; *Valladarez-Martinez*, 2024 WL 953230, at *2; *see also Robinson v. State*, 971 S.W.2d 96, 98-99 (Tex. App.—Beaumont 1998, pet. ref'd). Accordingly, we overrule issue four.

Having overruled all of Murphrey's issues, we affirm the trial court's judgments.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on August 20, 2024
Opinion Delivered September 18, 2024
Do Not Publish

Before Johnson, Wright and Chambers, JJ.

17